UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

APPLICATION OF INTERNATIONAL MINERAL RESOURCES B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant.

Case No. _____

**DECLARATION OF JONATHAN D. COGAN**

# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE:

APPLICATION OF INTERNATIONAL MINERAL RESOURCES B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782
Jan Luijkenstraat 68
Amsterdam, 1071CS
Netherlands

Applicant.

Case: 1:14-mc-00340
Assigned To : Kessler, Gladys
Assign. Date : 4/3/2014
Description: Miscellaneous

---

### *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 PERMITTING INTERNATIONAL MINERAL RESOURCES B.V. TO ISSUE A SUBPOENA FOR THE TAKING OF A DEPOSITION AND THE PRODUCTION OF DOCUMENTS FROM RINAT AKHMETSHIN

International Mineral Resources B.V. ("IMR") respectfully petitions this Court *ex parte* for an order pursuant to 28 U.S.C. § 1782 authorizing it to take discovery from Rinat Akhmetshin, a resident of the District of Columbia, for use in foreign proceedings pending in the Amsterdam District Court in the Netherlands captioned *EuroChem Volga-Kaliy LLC v. International Mineral Resources B.V.* with case number C/13/539097 (the "Dutch Action").

### PRELIMINARY STATEMENT

This application stems from an alarming discovery made by IMR in connection with its defense of the Dutch Action, a USD $1 billion dispute between IMR and EuroChem Volga-Kaliy LLC ("ECVK"). Specifically, IMR's investigators uncovered evidence that Rinat Akhmetshin, on behalf of ECVK or its parent company, EuroChem, hacked into computer systems of IMR and its officers and associates, stole confidential, personal and otherwise sensitive information, and disseminated that information in an unlawful attempt to gain an unfair advantage in the Dutch Action.

By this Section 1782 Application, IMR seeks to obtain from Mr. Akhmetshin further evidence to support positions it is contemplating taking in the Dutch Action, including that, under Dutch legal principles, ECVK should suffer adverse consequences (described in detail below) as a result of its hacking and dissemination of confidential IMR documents. In addition, IMR seeks evidence to support new litigation it is contemplating against ECVK and/or EuroChem in the Dutch courts for the unlawful hacking of IMR's computer systems and subsequent use of the hacked material in the Dutch Action.

As set forth below, this Section 1782 Application should be granted for the following reasons. *First*, it meets the statutory requirements for a Section 1782 application because Mr. Akhmetshin is "found" in this district and the discovery sought is "for use" in foreign proceedings in which IMR is an "interested person." *Second*, the discretionary factors that this Court should consider in determining whether to grant an application under the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.* all favor granting the Section 1782 Application.

Accordingly, and for the reasons described below, IMR respectfully requests that the Court grant it permission to take discovery from Mr. Akhmetshin.

## FACTUAL BACKGROUND

**I.    IMR, SHAFT SINKERS AND ECVK, AND THE VARIOUS FOREIGN LEGAL PROCEEDINGS BETWEEN THEM**

IMR is a private limited liability company organized under the laws of the Netherlands that regularly invests in the mining and metal industries. (Declaration of Tadeusz Jarmolkiewicz, Mar. 26, 2014 ("Jarmolkiewicz Decl.") ¶ 4.) IMR holds a 48% interest in the publicly traded

parent of a mining company called Shaft Sinkers (Proprietary) Limited ("Shaft Sinkers").[1] (*See id.* ¶ 5.) EuroChem claims to be Russia's largest producer of mineral fertilizers. (*Id.* ¶ 8.) From 2007 to 2011, EuroChem, by its wholly-owned subsidiary, ECVK, engaged Shaft Sinkers to design and construct a mine shaft as part of a mining project near the Russian town of Kotelnikovo where EuroChem has the rights to mine a subterranean potash deposit. (*Id.* ¶ 9.)

In 2012, the business relationship between Shaft Sinkers and ECVK broke down and the following litigation and arbitration proceedings were subsequently commenced:

- Arbitration Proceedings. In late 2012, ECVK filed two arbitration proceedings against Shaft Sinkers. In those proceedings, which are ongoing, ECVK alleges that Shaft Sinkers fraudulently gave a bad faith guarantee, fraudulently concealed a report on subterranean conditions and their consequences, and engaged in bribery in connection with the Kotelnikovo mining project. (Declaration of Robbert de Bree Mar. 20, 2014 ("De Bree Decl.") ¶ 4 & Ex. C ¶ 2.2.) As a result, ECVK claims that it is entitled to more than USD $1 billion in damages. (*Id.*)

- The Dutch Action. On March 25, 2013, ECVK commenced the Dutch Action against IMR in the Amsterdam District Court. In the Dutch Action, which is ongoing, ECVK claims that IMR should be held liable for Shaft Sinkers's alleged conduct in connection with the Kotelnikovo mining project because IMR allegedly had a majority stake in Shaft Sinkers at the time and because Shaft Sinkers allegedly acted under IMR's supervision and control. (De Bree Decl. ¶ 5 & Ex. A ¶¶ 5.1, 8.9.)

- The Application Seeking Pre-Judgment Attachment of Assets. On June 24, 2013, ECVK filed an application in the Dutch Action seeking a pre-judgment attachment of IMR's assets pending a final judgment in the case (the "Freezing Application"). (De Bree Decl. ¶ 6 & Ex. B ¶¶ 6.1-6.21.) On July 19, 2013, the Dutch court granted ECVK's requested relief and issued an order freezing approximately €886,000,000 — or USD $1.2 billion — of IMR's assets. (*Id.* ¶ 7 & Ex. C ¶ 4.1.)

---

[1] IMR holds a 48% interest in Shaft Sinkers Holdings PLC, a publicly listed company on the London Stock Exchange, which in turn is the sole shareholder in a South African-incorporated shaft sinking company named Shaft Sinkers (Proprietary) Limited ("Shaft Sinkers"). IMR held a 54% interest in Shaft Sinkers Holdings PLC prior to its listing. (Jarmolkiewicz Decl. ¶¶ 5-6.)

3

## II. IMR LEARNS THAT ITS COMPUTERS HAVE BEEN HACKED AND THAT IT IS THE VICTIM OF A CAMPAIGN BEING WAGED ON BEHALF OF EUROCHEM BY RINAT AKHMETSHIN AND OTHERS

In early 2013, IMR personnel began to suspect that their computer systems had been hacked, so the company initiated an investigation. (Jarmolkiewicz Decl. ¶ 10.) After a substantial investigation, IMR found (1) that EuroChem hired Mr. Akhmetshin; and (2) that Mr. Akhmetshin (or others acting with him) hacked into IMR's computer systems and stole IMR's files as part of EuroChem's and ECVK's campaign to harm IMR and gain an unfair advantage in the Dutch Action. (*See* Declaration of Patokh Chodiev, Mar. 22, 2014 ("Chodiev Decl.") ¶¶ 6-11; Declaration of Raphael Rahav, Mar. 21, 2014 ("Rahav Decl.") ¶¶ 4-10; Declaration of Akis Phanartzis, Mar. 20, 2014 ("Phanartzis Decl.") ¶¶ 4-22; Jarmolkiewicz Decl. ¶¶ 11-15.)

### A. EuroChem Hires Mr. Akhmetshin to Carry Out Its Hacking And Smear Campaign Against IMR

Mr. Akhmetshin lives in Washington, D.C. (Declaration of John Scanlon, Apr. 2, 2014 ("Scanlon Decl.") Ex. C.) This action is not the first time that Mr. Akhmetshin has been involved in litigation as a result of his work. In *Egiazaryan v. Zalmayev*, the plaintiff alleged that Mr. Akhmetshin worked with the defendant, Peter Zalmayev, to orchestrate a "black (*i.e.*, negative) public relations campaign" that was "designed to discredit" the plaintiff in order to benefit his "litigation foes" (among others). (Compl. ¶ 18 (ECF No. 1), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Apr. 19, 2011); Am. Compl. ¶¶ 9, 32-76, 95-106, 115, 121 (ECF No. 110), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Feb. 29, 2012); Letter at 1 (ECF No. 191), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Oct. 17, 2012).) The plaintiff specifically alleged that Mr. Zalmayev and Mr. Akhmetshin strategically planted negative articles about the plaintiff in various publications, and encouraged non-profit organizations to write letters to Congress about the plaintiff that they later had to retract when they realized that they had been

4

"misled." (Compl. ¶ 21 (ECF No. 1), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Apr. 19, 2011); Am. Compl. ¶¶ 32-76, 95-106 (ECF No. 110), *Egiazaryan v. Zalmayev*, No. 11-2670 (S.D.N.Y. Feb. 29, 2012).)

During the course of their investigation, IMR's investigators learned from multiple sources that EuroChem had hired Mr. Akhmetshin as part of an effort to improperly give ECVK an unfair advantage in the arbitrations and litigation. (*See* Rahav Decl. ¶¶ 4-5; Phanartzis Decl. ¶¶ 4, 13-22; *see also* Chodiev Decl. ¶¶ 9-11.). IMR received confirmation of Mr. Akhmetshin's role on behalf of EuroChem in conversations between one of IMR's shareholders, Patokh Chodiev, and EuroChem's owner, Andrey Melnichenko. Specifically:

- On May 22, 2013, at a meeting in Mr. Melnichenko's home in the South of France, Mr. Chodiev confronted Mr. Melnichenko about whether he or EuroChem had hired Mr. Akhmetshin to wage a smear campaign against IMR and its shareholders. Mr. Melnichenko claimed during this conversation that he was not aware of Mr. Akhmetshin's engagement. (Chodiev Decl. ¶ 9.)

- On June 21, 2013, at a meeting in EuroChem's offices in Moscow, Mr. Chodiev again expressed concern that IMR was continuing to experience issues with the dissemination of its confidential documents. Mr. Melnichenko admitted in this conversation that indeed Mr. Akhmetshin was hired by EuroChem's lawyers, Salisbury & Ryan LLP,[2] to wage a smear campaign against IMR, in order to assist EuroChem in its dispute against IMR in the Dutch Action. (*See id.* ¶¶ 10-11.)

### B. Mr. Akhmetshin (And/Or Others Working With Him) Hacked Into IMR's Computer Systems and Stole IMR's Confidential Files

During the course of their investigation, IMR's investigators received reports that Mr. Akhmetshin distributed to third parties documents that he claimed had been obtained by hacking IMR's computer systems. (*See* Phanartzis Decl. ¶¶ 4, 12-22; Rahav Decl. ¶¶ 4-10.) IMR's

---

[2] Salisbury & Ryan LLP is the law firm representing ECVK in the two arbitration proceedings referenced above and has also appeared in the Dutch Action alongside Dutch counsel for ECVK. (De Bree Decl. ¶ 8.) Salisbury & Ryan LLP also represented Mr. Zalmayev, Mr. Akhmetshin's alleged collaborator, in the *Egiazaryan v. Zalmayev* case. (*See* Scanlon Decl. Ex. B at 2.)

5

investigators subsequently sought to obtain corroboration that Mr. Akhmetshin had indeed been involved in hacking its computer systems and was distributing stolen information to others. As it turns out, IMR's investigators were able to obtain two pieces of strong corroboration: (1) an anonymous source provided IMR investigators with a thumb drive containing apparently stolen IMR documents; and (2) an IMR investigator personally witnessed and overheard a conversation at a London coffee shop during which Mr. Akhmetshin handed over to a third-party an external hard drive which he described as containing files obtained from IMR computers. (Rahav Decl. ¶¶ 5-10; Jarmolkiewicz Decl. ¶¶ 11-15; Phanartzis Decl. ¶¶ 4-19.)

        i.  *The Thumb Drive*

After receiving reports that Mr. Akhmetshin had hacked IMR's computers and was distributing stolen documents to third parties, IMR's investigators reached out to a number of individuals who they thought might have access to the stolen information to see if these individuals could provide them with proof that Mr. Akhmetshin was in fact distributing stolen IMR documents. (Rahav Decl. ¶ 5.) Understanding that sources are often nervous about turning over this type of sensitive information, the IMR investigators gave their sources locations where they could drop off the hacked information anonymously. (*Id.* ¶ 6.)

On December 8, 2013, one of IMR's investigators was staying at the Radisson Edwardian Berkshire Hotel in London and received a message from the concierge to pick up an envelope in the lobby of the hotel. (*Id.* ¶ 7.) The investigator picked up the envelope from the concierge and discovered that it contained a thumb drive. (*Id.*) Suspecting that the thumb drive contained the materials stolen by Mr. Akhmetshin, the investigator did not try to access the data on the thumb drive. (*Id.* ¶¶ 8-9.) Subsequently, a copy of the thumb drive was made and provided to IMR for review. (*Id.* ¶ 10; Jarmolkiewicz Decl. ¶ 11.)

IMR's review of the thumb drive confirmed that it contained confidential IMR documents. (Jarmolkiewicz Decl. ¶¶ 11-15.) Indeed, the thumb drive contained more than 28,000 individual files. (*Id.* ¶ 11.) These files included confidential and highly sensitive personal and commercial information, including passport information, emails, and personal contact lists for executives within IMR and associated entities; IMR bank account information, loan agreements, strategy documents, and board meeting minutes; emails and wire transfers related to Shaft Sinkers's employees and subsidiaries; and highly confidential internal documents from Eurasian Natural Resources Corporation PLC ("ENRC").[3] (*Id.* ¶ 12.) The files also contained numerous folders of documents relating to the ECVK legal proceedings and privileged attorney-client communications related to those proceedings. (*Id.* ¶ 13.)

In addition, the files were extracted from the computer servers of multiple individuals and from different companies. (*Id.* ¶ 14.) Based on the disparate nature of the files on the thumb drive — which pertain to numerous employees at multiple companies, and which would have been stored on separate servers — IMR believes that they could only have been obtained by way of hacking. (*Id.* ¶¶ 14-15.)

      ii. *The Coffee Shop Conversation*

In mid-January 2014, another IMR investigator received information that Mr. Akhmetshin would be traveling to London later that month. (Phanartzis Decl. ¶ 5.) On January 29, 2014, this investigator located Mr. Akhmetshin at Le Meridien Piccadilly. (*Id.* ¶ 6.) The IMR investigator went to the site with a local surveillance team, and they identified Mr. Akhmetshin checking into the hotel at 5:30 p.m. (*Id.* ¶¶ 7-9.)

---

[3] The same shareholders who ultimately own IMR were former owners of ENRC, and are now minority shareholders in the delisted successor group now known as Eurasian Resources Group. (Jarmolkiewicz Decl. ¶ 7.)

7

The next morning, on January 30, 2014, at approximately 11:15 a.m., the IMR investigator observed Mr. Akhmetshin entering the Café Royal Coffee Shop on Regent Street, so the investigator took a seat nearby. (*Id.* ¶¶ 10-11.) At approximately 11:25 a.m., Mr. Akhmetshin was joined by an unidentified businessman in his forties who was carrying a laptop. (*Id.* ¶ 12.) After they had exchanged pleasantries, Mr. Akhmetshin handed the businessman an external hard drive and explained that the drive contained numerous folders of documents that included memoranda, emails, and financial information. (*Id.* ¶ 13.) Mr. Akhmetshin described his process for obtaining the documents, stating that his team had collected materials from IMR senior executives, such as the CEO of IMR, and from individuals in key administrative positions whose computers would contain important internal documents. (*Id.* ¶¶ 14-15.) Mr. Akhmetshin said that his team had collected approximately 50 gigabytes worth of material, although he noted that some of the less sensitive materials were stored at his home. (*Id.* ¶ 16.) The businessman commented on the volume of material, and Mr. Akhmetshin responded, "there is a lot of the stuff, so – but that's why you are paying money." (*Id.* ¶ 17.)

Mr. Akhmetshin explained that EuroChem hired him because of his expertise in disputes that require sensitive work and because of his contacts in Kazakhstan. (*Id.* ¶ 19.) He stated that he had met with lawyers for Mr. Melnichenko, EuroChem's owner, in New York. (*Id.* ¶ 20.) He identified one of these lawyers as Patrick Salisbury, a partner at Salisbury & Ryan LLP, and said that Mr. Salisbury was representing EuroChem in the Shaft Sinkers and IMR actions. (*Id.*) Mr. Akhmetshin added that he was hired because there were certain things that the law firm could not do. (*Id.* ¶ 21.) Mr. Akhmetshin noted that he had a meeting with Patrick Salisbury the following week in New York to discuss next steps for the case against IMR. (*Id.* ¶ 22.)

8

### III. IMR'S CONTEMPLATED RESPONSE

Although IMR's investigation has produced strong evidence regarding the theft of tens of thousands of sensitive files from IMR and associated entities and individuals, IMR does not yet know the full extent of what was stolen nor all the ways it might have been used. Indeed, during the coffee shop conversation referenced above, Mr. Akhmetshin stated that he kept many of the IMR files on his computer at home (rather than on the thumb drive), which means that there may very well be additional materials that were improperly obtained and used. (*See supra* at 8; Phanartzis Decl. ¶ 16.) Accordingly, IMR seeks permission to take discovery from Mr. Akhmetshin regarding the full scope of his hacking and other activities taken on behalf of EuroChem and ECVK against IMR. This discovery will aid IMR with the existing Dutch Action and with the potential commencement of new, foreign litigation against EuroChem and ECVK. Specifically, IMR is contemplating the following actions in which discovery may be used against EuroChem and ECVK.

First, IMR is contemplating a motion in the Dutch Action to lift the USD $1 billion attachment of its assets. Dutch law provides that a party that is subject to an attachment order may move to lift the attachment at any time. (De Bree Decl. ¶ 9.) In evaluating an attachment order, the Dutch court will engage in a balancing of interests in which it can weigh, among other things, the strength of the invoked right, the damage done to the party whose assets are frozen, and other factors related to the parties. (*Id.* ¶ 9 & Ex. C ¶ 3.2.) In this case, IMR would seek to demonstrate that ECVK's application for an attachment order relied on stolen information to gain an unfair advantage in securing the attachment. (De Bree Decl. ¶ 10.)

Second, IMR is contemplating raising the issue of inequitable conduct as a basis for dismissing the Dutch Action. Litigants in the Netherlands owe a duty of "full and frank disclosure." (De Bree Decl. ¶ 11.) Parties to Dutch litigation also owe a duty of "fair play," meaning that they must comport themselves in a fair and equitable manner in connection with the conduct of the

litigation.  (*Id.* ¶ 12.)  Dutch courts have broad discretion to remedy violations of the duties of full and frank disclosure and of fair play, including by dismissing entire claims in extreme cases of misconduct.  (*Id.* ¶ 13.)  IMR is thus contemplating a motion in the Dutch Action arguing that this is an extreme case requiring dismissal, as the litigation conduct at issue here is particularly appalling.  (De Bree Decl. ¶¶ 14-15.)

<u>Third</u>, IMR is contemplating the initiation of a new action against EuroChem and ECVK in the Netherlands based on EuroChem's unlawful hacking of IMR's computer systems and subsequent use of the hacked information in the Dutch Action (the "Contemplated Dutch Proceedings").  Under Dutch law, the requirements for such an action are (i) that an unlawful act was committed,[4] (ii) which is attributable to the person who has committed it, (iii) whereby the subject of the act has suffered loss (which loss therefore must have a causal link with the act).  (De Bree Decl. ¶ 17.)  In the Contemplated Dutch Proceedings, IMR would seek damages on the ground that EuroChem, through Mr. Akhmetshin and others, unlawfully hacked into IMR's computer systems in breach of IMR's privacy rights, and used the hacked information to the detriment of IMR in the Dutch Action.  (*Id.* ¶¶ 19-21.)

---

[4] An unlawful act can come in many factual shapes and forms, but must consist of a breach of a right or acting in breach of a legal duty or contrary to the public order and/or public morality, or acting in breach of a duty imposed by an unwritten rule of law in relation to proper social conduct.  (De Bree Decl. ¶ 18.)

## ARGUMENT

The Court should issue an order granting IMR's application for discovery because (i) IMR meets the statutory prerequisites for relief under 28 U.S.C. § 1782, and (ii) the factors to be weighed by the Court in exercising its discretion under the statute heavily favor granting IMR's application.

### I. IMR'S PETITION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Section 1782 of Title 28 of the United States Code, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants, such as IMR, in obtaining evidence in the United States for use in foreign legal proceedings.[5] To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements: (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person. 28 U.S.C. § 1782(a); *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010).

IMR's petition satisfies each of these three conditions. *First,* the party from whom discovery is sought, Mr. Akhmetshin, is present within the District of Columbia. Mr. Akhmetshin lives at 1529 Vermont Avenue NW, Washington, D.C. 20005. (Scanlon Decl. Ex. C); *see also* 28 U.S.C. § 1782(a) ("The district court of the district in which a person *resides* . . . may order him to

---

[5] 28 U.S.C. § 1782(a) provides, in relevant part: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

give his testimony or statement or to produce a document or other thing . . . ."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the district).

*Second*, the documents and deposition testimony requested are "for use" in the Dutch Action and the Contemplated Dutch Proceedings. The "for use" requirement imposes a "de minimus" burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *Veiga*, 746 F. Supp. 2d at 17-18 (citing cases). Relevance is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *Id.* at 19 (citing *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000)). When relevance is in doubt, the district court should be permissive. *Id.* (citation omitted). District courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding. *Id.* at 17-18 (citing cases); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting unanimity among the Circuits who have ruled on the issue).

Moreover, "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). Instead, the Supreme Court has held that Section 1782(a) requires only that a proceeding "be within reasonable contemplation." *Id.* at 259. To be "within reasonable contemplation," the future proceedings must merely be more than speculative; the applicant must simply provide "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *In re Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989).

Here, the requested discovery will allow IMR to pursue the three different legal avenues in the foreign proceedings outlined above. *See supra* at 9-10. Discovery will allow IMR to gather evidence in support of its contemplated motion to lift the USD $1 billion attachment of its assets. (*See* De Bree Decl. ¶ 10.) Discovery will also assist IMR in raising the issue of inequitable conduct as a basis for dismissing the Dutch Action. (*See id.* ¶¶ 13-15 (explaining that Dutch courts have broad discretion to dismiss a case for inequitable conduct).) Finally, discovery will allow IMR to gather evidence in support of a potential new action against EuroChem and ECVK in the Dutch courts for arranging the unlawful hacking of IMR's computer systems and subsequent use of the hacked information against IMR in the Dutch Action. (*See id.* ¶¶ 19-21.)[6]

*Third,* as the respondent in the Dutch Action and the potential plaintiff in the Contemplated Dutch Proceedings, IMR qualifies as an "interested person" under Section 1782. *See In re Crown Prosecution*, 870 F.2d at 689-90 ("interested person" includes "litigants before foreign or international tribunals . . . as well as any other person . . . [who] possess[es] a reasonable interest in obtaining the assistance."); *Consorcio Ecuatoriano*, 2014 WL 104132, at *4-6 (potential plaintiff seeking discovery for use in contemplated foreign civil proceeding is an "interested person").

---

[6] Courts have found that an order of discovery is appropriate for a contemplated proceeding where, as here, the applicant has conducted a detailed investigation before filing the application. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, ___ F.3d ___, No. 11-12897, 2014 WL 104132, at *6 (11th Cir. Jan. 10, 2014) (discovery granted for contemplated proceeding where Section 1782 applicant first conducted "an extensive internal audit" and provided a "detailed explanation of its intent to pursue civil" litigation).

13

## II. THE COURT SHOULD GRANT IMR'S SECTION 1782 PETITION UNDER THE FOUR DISCRETIONARY FACTORS IN *INTEL*

Once the statutory requirements are met, as they are here, courts consider four discretionary factors that were articulated by the Supreme Court in *Intel*: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (iv) whether the discovery sought is unduly intrusive or burdensome. 542 U.S. at 264-65; *Veiga*, 746 F. Supp. 2d at 17. In considering these factors, courts exercise their discretion liberally in favor of granting discovery. *See Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability.") (quotations and citation omitted). In this case, all four factors favor allowing discovery.

### A. Mr. Akhmetshin Is Not a Participant in the Dutch Action

Under *Intel*, this factor favors the applicant where the respondent is not a participant in the foreign proceeding. *See Intel*, 542 U.S. at 264; *Veiga*, 746 F. Supp. 2d at 23 (that proposed deponent was not a party, even though he had acted as counsel to one of the parties four years prior, weighed in favor of granting application). As the Supreme Court and several other courts have recognized, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *see e.g.*, *In re Imanagement Servs. Ltd.*, No. Misc. 05-89 (FB), 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005) (favoring discovery where targets were not parties to the foreign action, because "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

14

Here, Mr. Akhmetshin is not a party to the Dutch Action. (*See* De Bree Decl.¶ 22.) Indeed, even if Mr. Akhmetshin were to assert that he is amenable to subjecting himself to discovery in the Netherlands, relief should be granted because a Section 1782 applicant is not required to first seek the discovery in the foreign tribunal. *See Veiga*, 746 F. Supp. 2d at 23 (finding that the first factor weighed in favor of the applicant despite the respondent possibly being subject to the foreign tribunal's jurisdiction and the respondent's stated willingness to submit to its jurisdiction); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (noting the lack of a "quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court") (internal quotations omitted).

      **B.**    **The Dutch Courts Would Be Receptive to the Requested Discovery, and the Character of the Dutch Proceedings Favor Granting the Application**

In examining the second *Intel* factor, courts require "authoritative proof that the foreign tribunal would reject the evidence sought," such as a statement from the foreign tribunal itself, before finding that the factor weighs in favor of denying the application. *Veiga*, 746 F. Supp. 2d at 23-24 (internal quotations omitted); *Euromepa*, 51 F.3d at 1100. In this case, no such statement has been issued by the District Court of Amsterdam (De Bree Decl. ¶ 23), and there is no indication, let alone authoritative proof, that the Dutch courts would reject any of the documents or information gathered pursuant to the application.

To the contrary, the Dutch courts have expressed their willingness to admit evidence obtained through the Section 1782 discovery process. (De Bree Decl. ¶ 24.) For example, in *Convex cs. v. Duizendstraal cs.*, the Dutch District Court held that parties to Dutch proceedings are free to use an "informal judicial method," such as Section 1782, to gather evidence. *Convex cs. v. Duizendstraal cs.*, President District Court Utrecht, 9 April 1996, KG 1996/158. (*Id.*) The

15

decision of the Utrecht District Court was subsequently upheld by the Amsterdam Court of Appeals (*Hof*). *Convex cs. v. Duizendstraal cs.*, Court of Appeals (*Hof*) Amsterdam, 24 October 1996, NIPR 1997/120. (*Id.*) Likewise, in *Alfred Mol v. Kinetics Technology International B.V.*, the Dutch Supreme Court (*Hoge Raad*) held that evidence obtained via Section 1782 may be used in proceedings before the national courts. *Alfred Mol v. Kinetics Technology International B.V.*, Supreme Court (*Hoge Raad*), 6 February 1998, NJ 1999, 479.[7] (De Bree Decl. ¶ 25.)

Moreover, because a party may submit evidence at the trial level or later on appeal, evidence gathered pursuant to this Section 1782 Application may be submitted in support of the Dutch Action and Contemplated Dutch Proceedings for the foreseeable future.[8] (*See* De Bree Decl. ¶¶ 26-31.) This factor therefore strongly favors granting the application.

### C. IMR Is Not Circumventing Any Dutch Proof-Gathering Restrictions

Courts typically weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See*, *e.g.*, *Veiga*, 746 F. Supp. 2d at 24-25; *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464, at *7

---

[7] U.S. courts have likewise routinely granted Section 1782 applications seeking discovery for use in Dutch courts. *See, e.g.*, *In re Qwest Commc'ns Int'l Inc.*, No. 3:08-MC-93, 2008 WL 2741111, at *6 (W.D.N.C. July 10, 2008) (approving discovery under Section 1782 for use in the Amsterdam District Court); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1118 (E.D. Wis. 2004) (granting discovery pursuant to Section 1782 for use in proceedings in the United Kingdom, France, the Netherlands, Germany and Japan); *Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134, 138 (D. Conn. 1996) (granting in part a 1782 application for discovery to be used in a Dutch arbitration and litigation).

[8] The Dutch Action has been bifurcated into liability and damages phases. The decision in the liability phase is expected to be delivered on April 16, 2014. However, there is a reasonable possibility that the Amsterdam District Court will conclude that it does not yet have sufficient evidence to reach a final judgment and will instead issue an interim judgment, at which point IMR will most likely have the opportunity to submit additional evidence. Even if the Amsterdam District Court issues a final judgment on April 16, the parties will have a right to appeal. Such an appeal would be *de novo*, and IMR would not be limited to the record in the trial court. IMR would instead have the opportunity to submit additional evidence — including evidence obtained in the United States pursuant to 28 U.S.C. § 1782. (De Bree Decl. ¶¶ 26-30.)

(S.D.N.Y. Dec. 29, 2006); *In re Republic of Ecuador*, Nos. C11-8071 (CRB), C11-80172 (CRB), 2011 WL 4434816, at *5 (N.D. Cal. Sept. 23, 2011). Here, IMR seeks the requested discovery in good faith for use in pending and contemplated matters in the Dutch courts, which have historically been open to the use of proof gathered pursuant to Section 1782. (*See* De Bree Decl. ¶¶ 9-21, 23-25.) The Dutch court has issued no orders limiting IMR from seeking discovery from third parties in the Dutch Action (*Id.* ¶ 23), and there is no evidence that IMR has brought this application in bad faith. Accordingly, this factor also weighs in favor of granting the application.

### D. IMR's Discovery Requests Are Narrowly Tailored and Are Not "Unduly Intrusive or Burdensome"

The fourth *Intel* factor also weighs in favor of granting the application because IMR's discovery requests are narrowly tailored and in no way "unduly intrusive or burdensome." *See Intel,* 542 U.S. at 265. A copy of the subpoena that IMR intends to serve on Mr. Akhmetshin is attached as Exhibit A to the Scanlon Declaration. The potential burden and expense of compliance would be minimal because the requested discovery implicates a discrete universe of documents and testimony relating to Mr. Akhmetshin's own unlawful efforts on behalf of EuroChem and/or ECVK. *See, e.g., Veiga*, 746 F. Supp. 2d at 25 (granting a Section 1782 application where "the subject matter of the requests are reasonably tailored to speak to the claims and defenses raised in the proceedings at issue"); *Esses v. Hanania (In re Esses),* 101 F.3d 873, 876 (2d Cir. 1996) (per curiam) (affirming limited discovery where there was no "indication that the district court's order is overly burdensome or duplicative"). The relevant documents and testimony should thus be easily identifiable, readily accessible, and not burdensome for Mr. Akhmetshin to produce. Indeed, in an effort to narrowly tailor the discovery being sought, the proposed subpoena seeks production of documents in response to a single document request. To the extent that this lone document request

17

somehow creates burden issues for Mr. Akhmetshin, IMR would, of course, meet and confer with him in an effort to resolve them.

## CONCLUSION

Based on the foregoing, IMR respectfully moves the Court to issue an Order:

1. Approving IMR's petition for discovery; and

2. Granting issuance of the subpoena as it appears attached as Exhibit A to the Declaration of John Scanlon; and

3. Directing Rinat Akhmetshin to produce the documents in his possession, custody, and control, as requested in the subpoena, by no later than April 30, 2014, and to provide the deposition testimony requested in the subpoena on or before May 30, 2014.

Dated:      Washington, D.C.
            April 3, 2014

Respectfully submitted,

_____
S. Nathan Park (D.C. Bar No. 1000365)
KOBRE & KIM LLP
1919 M Street NW
Washington, D.C. 20036
Tel: +1 202 664 1900
Fax: +1 202 664 1920
nathan.park@kobrekim.com

Jonathan D. Cogan (*pro hac vice* pending)
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
jonathan.cogan@kobrekim.com

*Attorneys for Applicant International Mineral Resources B.V.*