UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                             :

IN RE APPLICATION OF               :
INTERNATIONAL MINERAL RESOURCES  :    15 Misc. 241 (Part I)
B.V.                             :    Case No. 15-mc-00241-P1
                             :
For an Order Pursuant to 28 U.S.C. § 1782 to  :    **ORAL ARGUMENT REQUESTED**
Conduct Discovery For Use In Foreign    :
Proceedings                    :
----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PRE-HEARING DISCOVERY AND TO
SUPPLEMENT RESPONDENT'S MOTION TO QUASH AND FOR RECIPROCAL
<u>DISCOVERY RELATED TO THE SUBPOENA DATED AUGUST 10, 2015</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Respondent Patrick Salisbury*

# TABLE OF CONTENTS

Page

Glossary of Terms ...................................................................................................................v

I.    Preliminary Statement .......................................................................................................1

II.   Factual Background ..........................................................................................................3

    A.   Shaft Sinkers' Fraudulent Inducement of ECVK .........................................3

    B.   Shaft Sinkers' Baseless Hacking Allegations in the Swiss Arbitration ............4

    C.   IMR's Litigation Misconduct in the Dutch Action .....................................5

    D.   IMR's Abusive 1782 Campaign ...............................................................6

III.  Argument ......................................................................................................................10

    A.   IMR Should Be Required to Produce All Evidence Regarding Its Hacking
        Allegations in Advance of Hearing Mr. Salisbury's Motion to Quash .........12

    B.   IMR's *Ex Parte* Application Does Not Meet the Statutory "For Use" Requirement ........16

        1.   The Sought Discovery Is Not Relevant to the Dutch Appeal ...................16

        2.   IMR's "Contemplated" Proceedings Are Pretextual and Insufficient ......18

    C.   The *Intel* Discretionary Factors Favor Quashing IMR's Subpoena .................19

        1.   IMR's Subpoena Is an Improper End-Run Around Party Discovery .......20

        2.   IMR's Sweeping Document Requests Are Unduly Invasive and Burdensome ........21

        3.   IMR's "Expected" Reliance on the Crime Fraud Exception Is Unfounded ...........22

    D.   Mr. Salisbury Is Entitled to Reciprocal Discovery Regarding IMR's Attempted
        Bribery and Witness Intimidation in Connection with the Dutch Proceeding ...............24

IV.   Conclusion ...................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Application of Malev Hungarian Airlines,*
    964 F.2d 97, 102 (2d Cir. 1992)......................................................................15, 16

*In re Asia Maritime Pacific Ltd.,*
    -- F. Supp. 3d --, No. 15-cv-2760 (VEC), 2015 WL 5037129 (S.D.N.Y. Aug.
    26, 2015) ......................................................................................................16, 19

*Bravo Express Corp. v. Total Petrochemicals & Refining USA,*
    613 F. App'x 319 (5th Cir. 2015) ........................................................................18

*Centauri Shipping Ltd. v. W. Bulk Carriers KS,*
    528 F. Supp. 2d 197 (S.D.N.Y. 2007)..................................................................15

*Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP,* 798 F.3d
    113 (2d Cir. 2015)..............................................................................17, 18, 19

*In re Chevron Corporation,*
    749 F. Supp. 2d 141 (S.D.N.Y. 2010)..................................................................20

*Crawford-El v. Britton,*
    523 U.S. 574 (1998)............................................................................................15

*In re Dominique Levy, L & M Galleries,*
    249 F.R.D. 96 (S.D.N.Y. 2008) ..........................................................................17

*In re Esses,*
    101 F.3d 873 (2d Cir. 1996)...............................................................................24

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995)..........................................................................15, 18

*Florida v. J.L.,*
    529 U.S. 266 (2000)............................................................................................13

*In re Grand Jury,*
    475 F.3d 1299 (D.C. Cir. 2007)..........................................................................23

*In re Grand Jury Proceeding,*
    79 F. App'x 476 (2d Cir. 2003) ..........................................................................21

*In re Grand Jury Subpoena,*
    282 F.3d 156 (2d Cir. 2002)...............................................................................21

*In re Hornbeam Corp.*,
    No. 14 Misc. 424-P1, 2014 WL 8775433 (S.D.N.Y. Dec. 24, 2014) ....................................22

*Intel Corp. v. Adv. Micro Devices, Inc.*,
    542 U.S. 241 (2004) .............................................................................3, 11, 18, 19, 20

*In re John Doe, Inc.*,
    13 F.3d 633 (2d Cir. 1994).........................................................................................23

*In re Kreke Immobilien KG*,
    No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ................................20

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001).............................................................................15

*In re Mare Shipping Inc.*,
    No. 13 Misc. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) .......................................20

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)............................................................................11, 16, 17

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006).............................................................................20

*In re Okean B.V.*,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014)........................................................................22, 24

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004).......................................................................................3, 11

*United States v. Abcasis*,
    811 F. Supp. 828 (E.D.N.Y. 1992) ...............................................................................13

*United States v. Jacobs*,
    117 F.3d 82 (2d Cir. 1997).........................................................................................22

*United States v. Levin*,
    No. 15 Cr. 101 (KBF), 2015 WL 5838579 (S.D.N.Y. Oct. 5, 2015)....................................22

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) .................................................................................20

*Vladimir v. Bioenvision Inc.*,
    606 F. Supp. 2d 473 (S.D.N.Y. 2009)............................................................................13

**Regulations**

N.Y. Comp. Codes R. & REGS. tit. 22, § 1200.0 R. 3.3(d) (2013)........................................14

**Other Authorities**

Model Rules of Prof'l. Conduct R. 3.3(d) cmt. 14 (2009)......................................................14

S. Rep. No. 88–1580, § 9, reprinted in 1964 U.S.C.C.A.N. ........................................................16

**Glossary of Terms**

| | |
|---|---|
| Rinat Akhmetshin | Former ECVK investigator hired by Patrick Salisbury in connection with ECVK's actions against IMR and Shaft Sinkers. Mr. Akhmetshin is the subject of a separate Section 1782 action brought by IMR in the D.C. District Court. *See In re Application of International Mineral Resources B.V. for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 14-mc-340. |
| Alexander Chernyshev | Former "Head of Corporate Affairs" and in-house counsel at JSC MCC EuroChem (ECVK's parent company) who was the target of attempted bribery by suspected IMR representatives to gain access to ECVK's litigation strategy related to the Mine Project. *See* Dkt. 28 at § I.C. |
| Patokh Chodiev | Member of the Trio, part owner of IMR. |
| Alon Davidov | IMR Representative for South Africa and CEO of Shaft Sinkers beginning in 2010. |
| Robbert de Bree | IMR's counsel in the Dutch Action brought by ECVK to collect the award from the Swiss Arbitration. |
| Dutch Action | Action brought in Dutch District Court by ECVK against IMR seeking to hold IMR liable for the Swiss Arbitration award. |
| Eurasian Natural Resources Corporation ("ENRC") | Sister company to IMR, owned by the Trio. Recently de-listed from the London Stock Exchange amid U.S. and U.K. investigations of fraud, bribery, and corruption. |
| EuroChem Volga-Kaliy LLC ("ECVK") | Company that contracted with Shaft Sinkers for construction of the Mine Project. A wholly-owned subsidiary of JSC MCC EuroChem, which is in turn a subsidiary of EuroChem Group AG ("EAG"), a Swiss company that is one of the largest fertilizer producers in the world; Mr. Salisbury's client. |
| Scott Horton | An attorney and author, and a participant with Mr. Akhmetshin in the London Information Bazaar. Mr. Horton is the subject of a separate, uncontested Section 1782 action brought by IMR in the Southern District of New York. *See In re Application of International Mineral Resources B.V. for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 15-mc-244-P1. |
| Alijan Ibragimov | Member of the Trio, part owner of IMR. |
| ICC Arbitration | The confidential and ongoing International Chamber of Commerce ("ICC") Arbitration initiated by ECVK in October 2012 in response to Shaft Sinkers' conduct on the Mine Project. |
| International Mineral Resources B.V. ("IMR") | Parent company of Shaft Sinkers, the company that ECVK hired for the Mine Project, at all relevant times. Wholly owned by the Trio. |
| Tadeusz Jarmolkiewicz | General Counsel of IMR and director of IMR's management subsidiary; supervised and approved the September 2012 document destruction at IMR's management subsidiary. |

| Akezhan Kazhegeldin | Former Prime Minister of Kazakhstan. |
|---|---|
| Vladimir Krakhmalnyy | Director of General Matters at ECVK. |
| London Information Bazaar | Mr. Akhmetshin's characterization of the informal network of reporters, politicians, non-governmental anticorruption agencies, and intelligence professionals where all manner of information is exchanged. |
| Alexander Machkevitch | Member of the Trio, part owner of IMR. |
| Andrey Melnichenko | Primary owner of ECVK's ultimate parent company, EAG. |
| Mine Project | Shaft Sinkers' contract with ECVK for construction of a mine shaft in southern Russia that gave rise to the original dispute between Shaft Sinkers and ECVK. ECVK hired Shaft Sinkers to build the mine shaft, but rescinded the contract after two years of delays and failed attempts by Shaft Sinkers. |
| New York Action | Action filed by IMR on November 12, 2015, in the Supreme Court for the State of New York, New York County, asserting claims for trespass to chattels and conspiracy against Mr. Akhmetshin, Mr. Salisbury, Salisbury & Ryan LLP, and ECVK. |
| Akis Phanartzis | GlobalSource investigator hired by IMR who allegedly overheard Mr. Akhmetshin discussing his methods of obtaining information in a London coffee shop. |
| Raphael Rahav | GlobalSource investigator hired by IMR who allegedly recovered the thumb drive from a London hotel where it was dropped off by an anonymous source. |
| Patrick Salisbury | New York lawyer who is counsel to ECVK in its disputes with Shaft Sinkers/IMR and the Respondent in this Section 1782 discovery action. |
| Valery Sidnev | General Counsel of JSC MCC EuroChem (parent company of ECVK). |
| Swiss Arbitration | The Swiss Rules Arbitration (Case No. 600318-2012) in which ECVK alleged that Shaft Sinkers (1) fraudulently induced ECVK to enter into a $350 million mine shaft construction contract that Shaft Sinkers knew it could not complete; (2) failed to construct the shaft; (3) committed massive procurement fraud; and (4) bribed ECVK's Chief of the Mine Construction Division. |
| Thumb Drive | The drive containing the allegedly hacked IMR files that Mr. Rahav allegedly recovered from a London hotel. |
| The Trio | Trio of Kazakhstani oligarchs who are the ultimate beneficial owners of IMR (the parent company of Shaft Sinkers) and ENRC. Consists of Alexander Machkevitch, Patokh Chodiev, and Alijan Ibragimov. |

Pursuant to this Court's October 26, 2015 Order (Dkt. 49), Respondent Patrick Salisbury submits this supplemental memorandum of law in support of his motion to quash and for reciprocal discovery.  Mr. Salisbury's prior memorandum (Dkt. 28), describes Petitioner IMR's litigation misconduct in multiple proceedings; this memorandum further demonstrates that IMR has failed to advise the Court of highly relevant facts adverse to its position, making its *Ex Parte* Application misleading.  IMR also has failed to provide this Court with any notice that it has now filed an action in New York State Court based on the same allegations for which it seeks discovery here—exposing that this and other Section 1782 applications IMR has filed were mere pretexts for obtaining discovery for use in a domestic proceeding.

## I.      Preliminary Statement

IMR obtained an *Ex Parte* Order for discovery from Patrick Salisbury, a New York lawyer who represents IMR's adversary, ECVK, in ongoing foreign litigation and arbitrations against IMR and its subsidiary, Shaft Sinkers.  Since 2012, these parties have been involved in multiple arbitration and litigation proceedings in Switzerland, France, and the Netherlands stemming from Shaft Sinkers' fraudulent inducement of ECVK to enter into a $350 million contract whose terms Shaft Sinkers knew it could not, and ultimately did not, fulfill.  ECVK recently obtained a $140 million arbitration award against Shaft Sinkers related to this misconduct, and has obtained attachments from a Dutch court of over $1 billion of IMR's assets on the basis of this award and other expected damages.

IMR seeks discovery from its adversary's counsel based on completely unsupported claims that ECVK arranged for the "hacking" of its computers, allegedly for use in foreign proceedings.  IMR does not even bother to demonstrate that its systems were hacked by anyone, however.  Instead it relies on "anonymous" sources and fails to inform this Court that it *has*

1

*already obtained discovery of the matters it seeks here, which disproved its hacking allegations*.

IMR's real motivation is to abuse Section 1782 to obtain discovery for use in the New York

Action, and to obtain information about ECVK's litigation strategy and avoid the billion dollar

attachments of its assets.  While there is no evidence that ECVK or Mr. Salisbury engaged in any

hacking or directed anyone else to do so, there is significant evidence of a pattern of deception

and fraudulent conduct by IMR and Shaft Sinkers in the underlying proceedings:

- Attempting to uncover privileged information about ECVK and its litigation strategy by trying to bribe former EuroChem in-house counsel Alexander Chernyshev.  Dkt. 28 at 5-7.
- Submitting false testimony and withholding documents to obtain a favorable ruling from the Dutch District Court.  *Id.* at 4-5.
- Threatening witnesses who have exposed IMR's lies to the Dutch courts.  *Id.* at 10.
- Engaging in wholesale destruction of documents in 2012 after being notified of anticipated claims by ECVK.  Ex. 27 ¶¶ 16, 21; Ex. 28 ¶¶ 6-7, 15.

This shocking conduct is par for the course for the "Trio" of billionaires that controls

IMR and Shaft Sinkers.  Alexander Machkevitch, Patokh Chodiev, and Alijan Ibragimov have

seen another of their mining ventures, ENRC, delisted from the London Stock Exchange while

under investigation for fraud, bribery, and corruption.  ENRC remains under investigation by the

U.K. Serious Fraud Office and the U.S. Department of Justice.  The U.K.'s High Court recently

found that the Trio committed fraud on the court by submitting false witness statements and

giving false testimony in a dispute over ENRC's IPO.  Dkt. 28 at 4.  Chodiev is also the subject

of a criminal investigation in France over his alleged bribery of French officials to settle money

laundering charges.  *Id.* at 3.

IMR's subpoena should be quashed for its lack of a factual basis for its predicate

"hacking" allegations and failure to disclose adverse facts, including its "unusually radical"

document destruction policies that make "hacking" highly unlikely.  At minimum, this Court

should order preliminary discovery regarding the purported factual basis of IMR's claims, since

IMR submits no first-hand evidence of "hacking," and refuses to provide any to Mr. Salisbury.

Even if the *Ex Parte* Application had a factual basis, which it does not, the Subpoena should be quashed.  Section 1782 permits discovery where the evidence sought is "for use in a foreign proceeding before a foreign tribunal."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004).  IMR cannot make this showing.  First, just days ago, IMR filed an action based on these same allegations in New York State Court against Mr. Salisbury, his firm, ECVK, and Mr. Akhmetshin.  The discovery it seeks here is not "for use" in a foreign proceeding at all, since IMR has not identified a single hacked document used in the Dutch Action.  Moreover, the evidence sought by IMR bears no relevance to the Dutch appeal, and its claim that it is exploring a future Dutch action is an insufficient basis for Section 1782 discovery, in addition to lacking credibility in view of the New York Action.

The discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004), also weigh against permitting the discovery.  As set forth in Mr. Salisbury's October 9 brief, the Subpoena effectively targets ECVK, IMR's adversary in the Dutch proceedings.  This Application is thus an attempted end-run around both party discovery in the Netherlands and the New York Action that this Court should not permit.

Finally, if the Court does not quash, it should narrow the Subpoena and grant Mr. Salisbury's request for reciprocal discovery, not only into the bogus allegations of hacking underlying IMR's petition, but also into IMR's misconduct in the Dutch proceedings.

## II.      Factual Background

### A.      Shaft Sinkers' Fraudulent Inducement of ECVK

As has now been established in a final Swiss arbitration award, Shaft Sinkers, IMR's South Africa-based subsidiary, fraudulently induced ECVK to enter into a $350 million contract

to construct a state-of-the-art 3,665-foot mine shaft for a potash mine.  Ex. 29 ¶ 190.[1]  ECVK

entered into the contract in reliance on Shaft Sinkers' unequivocal guarantee that its proposed

construction method was feasible, all the while covering up its knowledge that it was not,

including by bribing an ECVK official to keep silent about the project's inevitable failure.

*Id*. ¶¶ 446, 1070-73.  Four years after the contract was signed, ECVK was left with a crooked,

flooded, 307-foot hole in the ground requiring significant remediation.  *Id*. ¶¶ 325, 329, 334, 344.

ECVK decided to pursue legal remedies for the hundreds of millions of dollars in

damages it incurred as a result of Shaft Sinkers' fraud.  Among other things, Mr. Salisbury

engaged Rinat Akhmetshin, an expert in the Eurasian region, to assist with pre-filing research

and due diligence regarding Shaft Sinkers' assets and business relationships, including to its

parent company, IMR, and the Trio.  Dkt. 29 ¶¶ 12-17; Dkt. 32 ¶¶ 3-5; Ex. 22.  The terms of the

retention required Mr. Akhmetshin to act "in full compliance with all applicable laws of the U.S.

and other relevant jurisdictions."  Ex. 22 at 1; *see also* Dkt. 29 ¶¶ 17, 25; Dkt. 32 ¶ 6.

## B.    Shaft Sinkers' Baseless Hacking Allegations in the Swiss Arbitration

In October 2012, ECVK filed arbitral proceedings against Shaft Sinkers in Switzerland.

Dkt. 30 ¶12.  Eight months later, Shaft Sinkers lodged hacking allegations against ECVK there,

claiming that three employee email accounts were hacked from IP addresses pertaining to

ECVK.  Ex. 29 ¶ 33.  The Tribunal dismissed Shaft Sinkers' hacking claims in their entirety,

citing ECVK's explanation that the IP addresses (1) were not, in fact, registered to ECVK and

(2) were accessible to Shaft Sinkers and others working on the Mine Project.  Ex. 30 at 2.

ECVK prevailed in the arbitration, with the Tribunal concluding that Shaft Sinkers had

engaged in fraud and bribery and awarding ECVK $140 million in damages, none of which it has

---

[1] Exhibits 1 to 25 are attached to the Declaration of Matthew Feser filed in support of Respondent's Memorandum of Law in support of the Motion to Quash.  (Dkt. 34.)  Exhibits 26 on are attached to the Declaration of Mary Beth Maloney, filed in support of this Supplemental Memorandum of Law.

been able to collect to date.  ECVK is pursuing additional actions, including arbitration before

the International Chamber of Commerce, against Shaft Sinkers and others to collect all damages

it has incurred due to Shaft Sinkers' fraud and breach.  *See* Dkt. 30 ¶ 12.

**C.      IMR's Litigation Misconduct in the Dutch Action**

In March 2013, ECVK brought a civil action in Dutch District Court against IMR to hold

it liable for the arbitration award against its subsidiary, Shaft Sinkers, based on its pervasive

control of Shaft Sinkers.  Dkt. 33 ¶ 5.  The Dutch District Court granted ECVK's motion for pre-

judgment attachment of $1 billion of IMR assets, finding that ECVK had demonstrated a prima

facie case that IMR controlled Shaft Sinkers.

IMR sought dismissal of the Dutch Action on the basis that, under an applicable

Shareholder Agreement, IMR only had a right to appoint three out of the six directors on Shaft

Sinkers' Board of Directors and therefore did not control Shaft Sinkers.  *Id.* ¶¶ 8-9.  In what has

become a familiar pattern, IMR did not produce or submit a copy of the actual Shareholder

Agreement.  Instead, it relied on carefully-worded submissions "about" the Agreement by its

counsel, Robbert de Bree, and its witnesses.  *Id.* ¶ 9.  When ECVK finally obtained a copy of the

Shareholder Agreement from Shaft Sinkers' former CFO, it became clear that de Bree's

representation and IMR's witness statements omitted the key fact that *each IMR-appointed*

*director is given two votes, giving them 6 out of 9 votes—a supermajority.*  *Id.* ¶ 10.  IMR also

falsely told the Dutch District Court that its "non-executive director" on the Shaft Sinkers Board,

Alon Davidov, was not substantively involved in Shaft Sinkers business, and that Shaft Sinkers'

Chairman, Amre Youness, was never in the service of IMR.

Before ECVK could obtain the Shareholder Agreement, the Dutch District Court

dismissed the action in reliance on de Bree's misrepresentations, finding that the limitation on

IMR's Board nominating power "disproves a decisive influence on the part of IMR on the policy

of" Shaft Sinkers and that Shaft Sinkers' bad acts could thus not be attributed to IMR.

Ex. 18 ¶ 4.3.  ECVK has now submitted the Shareholder Agreement to the Dutch Appellate

Court, along with affidavits from numerous former senior employees of Shaft Sinkers attesting

that Davidov was "the IMR person overseeing Shaft Sinkers' business day-to-day."  Ex. 31 ¶ 15;

Ex. 32 ¶ 5 ("Davidov had an executive office at Shaft Sinkers, where he worked full-time."); Ex.

33 ¶ 8 ("Davidov was really in charge and running the company.").  As set forth in Mr.

Salisbury's October 9 brief, IMR has tried to intimidate these witnesses into silence, but none

has retracted his or her testimony.  Dkt. 28 at 10; *see also* Exs. 34-5.

 Given this evidence of fraud on the Dutch District Court, on December 12, 2014, IMR's

request for relief from the $1 billion prejudgment attachment was denied and the attachment

remains in place pending the resolution of the Dutch appeal.  Dkt. 33 ¶ 5.  On November 5, 2015,

the Dutch District Court approved an additional $124 million attachment of IMR's assets, based

on the August 21, 2015 Swiss Tribunal Award.  Supp. Decl. of Koppenol-Laforce, Ex. 1.

**D.** **IMR's Abusive 1782 Campaign**

 IMR's baseless hacking allegations have already been rejected by the Swiss Arbitral

Tribunal and this Court should reject them also.  This is IMR's fourth bite at the "hacking" apple

and it has no more support for its allegations than when it began—quite the opposite.  The

discovery it has already obtained disproves these allegations, though IMR withholds that

evidence here.  Moreover, IMR will be able to seek the discovery it seeks here in the New York

Action it filed just days ago, its fifth bite at the hacking apple.  The New York Action is

premised on the exact same allegations as in this action: that Mr. Salisbury directed Mr.

Akhmetshin to somehow illegally access IMR's computer network to acquire IMR documents

and then to use IMR documents to "smear" IMR in the media.  Ex. 36.  The New York

Complaint makes claims of trespass to chattels (for the purported theft of documents) and civil

6

conspiracy (regarding the alleged hacking and "smear" campaign).  *Id*.

In April 2014, IMR leveled the same "hacking" allegations in a Section 1782 Application filed in the District of Columbia, seeking discovery from Mr. Akhmetshin.  *See* Dkt. 3-8.  IMR then brought a second application against Scott Horton, an attorney and author with whom Mr. Akhmetshin shared information about IMR.  (Case No. 15-mc-244 (S.D.N.Y. Aug. 4, 2015).)

In those applications, as here, IMR identified no actual breach of any computer system and no document that was obtained by hacking.  Rather, IMR described "rumors" and "reports" that it was hacked from unnamed and anonymous sources, and described—but did not submit—a thumb drive provided to it by an unknown "source" that allegedly contain unspecified IMR documents its General Counsel opines "could only have been obtained by way of illegal hacking."  Dkt. 3-2 ¶ 15.  IMR also submitted the same forensic declaration it relies on here from Michelle Maugeri, but as explained in the declaration of Respondent's forensic expert, Clint Modesitt, this declaration is far more telling for what it does not say than what it does.  *See* Modesitt Decl. ¶¶ 7-10.  For example, despite professing expertise about hacking, Ms. Maugeri's declaration offers no opinion on whether IMR's systems were ever breached or whether any of the documents on the thumb drive could have been obtained in such a breach.  *See id*. ¶¶ 10, 17-18, 20-22.  Ms. Maugeri simply claims that the metadata of "certain" unspecified files on the "thumb drive" contain "RA" and "Scott Horton," indicating that they "had been accessed" by users so-identified.  Dkt. 3-7 ¶¶ 7-8.  But as Mr. Modesitt explains, the values in these fields are easily manipulated, underscoring that IMR's failure to provide any chain of custody for the thumb drive or files on the thumb drive is fatal to its petition.  Modesitt Decl. ¶ 9.

IMR also proffers the declaration of an investigator who claims to have overheard Mr. Akhmetshin tell another individual with no connection to this dispute that he obtained IMR

documents through hacking.  This is classic hearsay proffered for its truth, though even if accepted at face value, it proves little and certainly does not prove hacking.  Indeed, despite offering multiple purported verbatim quotes from Mr. Akhmetshin, the investigator never claims Mr. Akhmetshin used the word "hack."  Dkt. 3-5 ¶ 14.

IMR obtained the discovery it sought in both the Akhmetshin and Horton 1782 proceedings.  IMR was permitted to depose Mr. Akhmetshin twice despite the fact that his work was clearly privileged and later obtained documents from his privilege log.  That discovery yielded no evidence of hacking, no evidence that Mr. Akhmetshin knows how to obtain documents by hacking, that he ever used or could have used any IP address that ever breached IMR's computer systems, that he directed any third party to do so, or that he told anyone about any computer hacking of IMR.[2]  Mr. Horton testified to nothing more nefarious than exchanging documents about IMR with Mr. Akhmetshin, one of which was apparently incriminating enough that he turned it over to law enforcement authorities.  Ex. 40 at 60:2-15.

Despite the utter lack of evidence of a crime or fraud, IMR sought and obtained *in camera* review of every document on Mr. Akhmetshin's privilege log.  ECVK intervened and asserted broad privilege and thus, in order to avoid waiver, elected not provide detailed descriptions for the documents on the log.  The District Court, without seeking any explanation for some ambiguous emails, assumed the truth of IMR's allegations and held that seven email

---

[2] *See* Ex. 37 at 202:1-2 ▮Redacted▮                                        systems."), 204:13-15 ▮Redacted▮ ▮, 206:25-207:1 ▮Redacted▮                          ; Ex. 38 at 418:14-18 ▮Redacted▮                          Dkt. 3-23 ¶ 8 ("I am not a computer specialist and I am not capable of 'hacking.'"); ¶ 14 ("It is not possible that I was overheard saying that I was turning over documents that I hacked from an IMR or ENRC computer, because I have never done so, nor do I have the skills to do so."); *see also* Ex. 39 ¶ 4 ("Mr. Salisbury confirmed that all of my work for his firm should comply with both U.S. law and any relevant foreign law. My engagement letter provided a specific provision to that effect. I, of course, confirmed that I would fully comply, and did so during my engagement with Salisbury & Ryan."); ¶ 7 ("At no time during my engagement with Salisbury & Ryan, or at any other time for that matter, did I hack into the computer systems of IMR. Nor did I ask or encourage anyone else to do such hacking. Nor did I otherwise obtain, access, or distribute information that I believed to be hacked from IMR.").

strings were subject to the crime-fraud exception (although it held many others were protected by privilege and work product).  Ex. 41.  After that ruling, Mr. Akhmetshin and ECVK were forced to disclose the privileged information they had been trying to protect—Mr. Akhmetshin's investigative methods and sources—in order to explain the emails.  Mr. Akhmetshin disclosed that he obtained documents regarding IMR through his network of sources centered in London, including journalists, politicians, and intelligence professionals, which he termed the "London Information Bazaar."[3] Dkt. 32 ¶¶ 12-19. Moreover, Mr. Akhmetshin identified his most significant source of documents about IMR as the former Prime Minister of Kazakhstan, Akezhan Kazhegeldin, who has an ongoing interest in the Trio because of their extensive business dealings in Kazakhstan. *See* Ex. 50.

The emails that the D.C. District Court ordered produced are communications between Mr. Salisbury and Mr. Akhmetshin about documents they expected to receive from Mr. Kazhegeldin, not IMR.  Dkt. 32 ¶¶ 24-28.  Mr. Akhmetshin refers to Mr. Kazhegeldin as "my friend" to protect his identity, and refers to the compilation of the documents in Mr. Kazhegeldin's possession into a database as the "project."  Ex. 38 at 358:2-24.  Mr. Salisbury and Mr. Akhmetshin discuss search terms, when the documents will be delivered, and, because Mr. Akhmetshin did not know the medium on which they would be delivered, he refers to it as the "thing."  Ex. 38 at 386:10-17.  Nowhere do these emails discuss or reference any "hacking" or unauthorized access of any IMR computer system—indeed IMR's computers are not referred to *anywhere*.  Mr. Akhmetshin and ECVK have challenged the D.C. District Court's incorrect conclusions about the emails, and although IMR has been in possession of this information since before it filed this Application, IMR fails to disclose it to this Court.

---

[3] *See, e.g.*, Ex. 37 at 181:12-182:7, 213:16-23; Ex. 38 at 326:5-326:21, 380:1-5, 391:6-19, 410:14-16, 411:1-16, 431:8-19, 434:7-19, 454:19-24, 487:25-488:19.  *See also* Dkt. 32 ¶¶ 12-19, Ex. 39 ¶¶ 14-17, 24-28.

IMR also strategically fails to provide a date range for the 28,000 documents on the thumb drive that it asserts "could only have been obtained" by hacking (Dkt. 3-2 ¶ 15), perhaps because of another key fact that makes its hacking claim highly improbable—its binding representation in judicial proceedings in London that it has a *30-day document destruction policy* for both hard copy and electronic documents, and thus no more than 30 days of documents are ever maintained on IMR's computers.  Ex. 43 at 7:22-8:7; Ex. 44 at 182:21-183:10; Ex. 15, ¶ 23 (noting Trio's "unusually radical programme of disposition, not only of hard copies but of documents contained on computer[s]").  If the date range of the allegedly hacked documents exceeds this 30-day window, that would further confirm Mr. Akhmetshin's account of receiving documents from third parties who accumulated them over time, disproving IMR's claims of "hacking."

## III.    Argument

In the absence of any credible support for the allegation that Mr. Salisbury or ECVK wrongfully obtained documents by hacking or directing the hacking of IMR's computer systems, IMR's Application for discovery is a baseless and harassing fishing expedition aimed at uncovering an adversary's privileged litigation strategy.  Mr. Salisbury is entitled to a fair opportunity to test this evidence before he is subject to expansive discovery regarding an ongoing client representation—for use against that client.  This Court also needs the evidence to decide this motion.  Mr. Salisbury thus requests that, prior to hearing this motion, the Court order IMR to produce the evidence it contends support its assertions, including the thumb drive and the "reports" received by its investigators, which IMR has refused to provide to Mr. Salisbury.

Even if it rested on sound evidence, IMR's Subpoena should be quashed.  First, IMR's *Ex Parte* Application does not meet the statutory requirements of Section 1782 because the

discovery is not "for use" in a foreign proceeding.  Not only has IMR now revealed that its true purpose was to pursue an action in the U.S.—the now-filed New York Action—the material sought is irrelevant to any claim or defense it could assert in the Netherlands.  *Intel*, 542 U.S. at 264–65; *Mees v. Buiter*, 793 F.3d 291, 296 (2d Cir. 2015).  IMR's reliance on a future action in the Netherlands is too speculative and belied by the filing of the New York Action.  The "twin aims" of Section 1782 are to "provid[e] efficient means of assistance to participants in *international* litigation in our federal courts and encourage[] foreign countries by example to provide similar means of assistance to our courts," not to permit pre-emptive discovery for domestic actions.  *Schmitz*, 376 F.3d at 84 (emphasis added).

Second, in his October 9 brief, Mr. Salisbury already addressed how the *Ex Parte* Application fails to meet the discretionary factors for discovery under Section 1782, including because it is a transparent and impermissible effort to end-run party discovery in the Dutch Action.  *See id.* at 85 (denying Section 1782 Application seeking discovery from an adversary's United States law firm because the petitioners are "for all intents and purposes . . . seeking discovery from DT, their opponent in the German litigation").  IMR is also using this Section 1782 proceeding to end-run party discovery in the New York Action.

Third, although IMR has agreed to narrow its overbroad Subpoena, it remains unduly intrusive and burdensome and seeks privileged documents, and should be quashed on that basis.

Finally, IMR's *Ex Parte* Application conceals its own litigation misconduct from this Court, including the attempted bribery of ECVK's former in-house counsel to obtain the very information it seeks here; the intimidation of ECVK's witnesses in the Dutch Action and the fraudulent procurement of the Dutch District Court's judgment dismissing ECVK's alter ego action.  IMR also conceals what a U.K. court called its "unusually radical programme" of

11

destroying all hard copy and electronic documents every 30 days, and the fact that its

management subsidiary engaged in wholesale destruction of documents relevant to the Swiss

arbitration and the Dutch Action when replacing its computer servers in September 2012, even

though its general counsel and the CEO of that subsidiary were well aware of the dispute

between ECVK and Shaft Sinkers.  *See* Ex. 27 ¶¶ 16, 21; Ex. 28 ¶¶ 6-7, 15.  ECVK did not learn

of this spoliation until it received affidavits in October 2015 in response to its request for pre-

action discovery.  These omissions violate IMR's heightened duty of candor for an *Ex Parte*

application and cast considerable doubt on the veracity of its allegations.  If IMR is permitted to

proceed with the discovery it seeks here, Mr. Salisbury should be permitted reciprocal discovery

regarding these events and other instances of misconduct on the part of IMR and related parties.

### A.    IMR Should Be Required to Produce All Evidence Regarding Its Hacking Allegations in Advance of Hearing Mr. Salisbury's Motion to Quash

IMR's allegations of hacking have no factual basis and are contradicted by affirmative

evidence that IMR failed to submit here, in violation of its duty to inform the Court of adverse

facts in an *Ex Parte* Application.

First, IMR does not even identify a single instance of unauthorized access of its

computers, much less a single document obtained during such access.  As explained by Mr.

Salisbury's forensic expert, IMR has put forth no evidence of the type generally used to support

a claim of hacking, such as a report noting an examination of network and system log files,

registry files, network traffic samples, authentication server records, and any number of other

forensic sources of information typically referenced to establish an event timeline and report of

findings aimed at containing and remediating a breach.  Modesitt Decl. ¶¶ 10, 21.  IMR's

forensic expert does not even claim to have inspected IMR's computer systems and provides no

opinion regarding whether IMR was hacked, when, or by whom.  *Id.* ¶ 21.  IMR's claim that it

received a thumb drive from an anonymous source full of "hacked" documents is also entitled to no weight, in particular where it failed to submit—and has refused to provide to Mr. Salisbury— a forensic copy of the thumb drive.  And its forensic expert provides no testimony regarding whether the documents on the thumb drive were or could have been obtained through hacking, and if so, when and how this alleged hacking occurred.  *Id.* ¶ 10.

Instead, IMR relies on "reports" that it was hacked, and a hearsay report of a conversation that has since been undermined by a participant in that conversation.  This "evidence" is entitled to no weight.  It is well settled that courts cannot credit allegations of unlawful activity premised on unknown, and therefore, inherently unreliable sources.  Without proof of the anonymous source's identity and its purported investigation, the Court—as well as Mr. Salisbury—is "wholly unable to determine whether th[ese] source[s] w[ere] in a position to know what [they] [are] alleged to have told [IMR], or, in fact, whether or not th[ese] alleged anonymous source[s] even exist[]."  *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 485–86 (S.D.N.Y. 2009); *cf. Florida v. J.L.*, 529 U.S. 266, 270 (2000) ("Unlike a tip from a known informant whose reputation can be assessed . . . an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.") (internal quotation marks and citation omitted). The investigator's hearsay account of Mr. Akhmetshin's claim to have "hacked" IMR is also entitled to no weight, especially because it is belied by Mr. Akhmetshin's own sworn testimony. *See United States v. Abcasis*, 811 F. Supp. 828, 835 (E.D.N.Y. 1992) (holding that "hearsay allegations . . . do not carry nearly the weight of sworn statements based on personal knowledge.").  A U.K. High Court justice who reviewed the same evidence IMR relies on here scoffed at IMR's representations about the overheard coffee shop conversation, noting that "we don't know how they managed to overhear the conversation.  Presumably some kind of long

13

distance [device] [a]s used by James Bond in the latest film." Ex. 26 at 185:4-8.

Mr. Akhmetshin's explanations are not only more plausible, they are corroborated by other witnesses. And Mr. Salisbury's expert Alexander Yearsley, a veteran of the London "business intelligence community," confirms that "[f]rom former government intelligence officers, to former NGO workers, to journalists, to law enforcement officers, the London Information Bazaar is a highly credible and often used information marketplace." Yearsley Decl. ¶ 12. Moreover, many documents regarding IMR were available on the "London Information Bazaar" between 2011 and 2013 due to several corporate scandals and ensuing investigations that enveloped the Trio's companies. Dkt. 3-18 ¶¶ 25-29.

Before IMR filed this application, Mr. Salisbury had also submitted multiple sworn declarations in the D.C. Action directly refuting the exact allegations IMR makes here.[4] Others, including ECVK's general counsel, have also attested they did not direct any hacking of IMR.[5]

Yet IMR has not submitted any of that evidence here. Instead, IMR recycles the same allegations it first offered the D.C. District Court in April 2014. This is improper in particular in an *ex parte* proceeding, where "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, *whether or not the facts are adverse*." N.Y. Comp. Codes R. & REGS. tit. 22, § 1200.0 R. 3.3(d) (2013); MODEL RULES OF PROF'L. CONDUCT R. 3.3(d) cmt. 14 (2009) (*ex parte* proceedings impose a heightened duty of

---

[4] Mr. Salisbury: Dkt. 3-18 ¶¶ 76 ("I specifically directed Mr. Akhmetshin that all work he performed be done in full compliance with U.S. and any applicable foreign law exactly as provided in the engagement agreement."), 79 ("[N]one of these documents were obtained from IMR. Rather, all were obtained from identifiable third party sources outside of IMR. Thus, none were obtained by Mr. Akhmetshin through hacking, as IMR now claims.").

[5] Mr. Krakhmalnyy: Ex. 45 ¶ 10 ("I have never instructed Mr. Akhmetshin or anyone else, directly or indirectly, to hack IMR's computers or otherwise access or obtain confidential information from IMR or any companies or people related to IMR."). Mr. Sidnev: Ex. 46 ¶ 19 ("I never commissioned, authorized, or knew about any such supposed hacking of IMR by Mr. Akhmetshin. To the best of my knowledge and belief nobody else at EuroChem or ECVK ever did. Neither EuroChem nor ECVK would ever tolerate, let alone request or encourage, improper behavior by its outside counsel or anyone retained by outside counsel.").

candor because "there is no balance of presentation by [an] opposing advocate[]").  Courts have issued sanctions for, and vacated *ex parte* orders obtained by, violations of counsel's duty of candor.  *See, e.g.*, *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007) (noting court's authority to vacate an *ex parte* maritime attachment and consider Rule 11 sanctions where applicant failed to correct material misstatements).  The Order granting IMR's *Ex Parte* Application should be vacated and the subpoena quashed.

If it is not, the Court should order immediate discovery as to the evidence supporting the *Ex Parte* Application, including a copy of the "thumb drive."  Ex. 49.  Mr. Salisbury "should not be put to the test of and burdened by defeating baseless charges" with no opportunity to challenge the factual basis purportedly contained in this secret evidence.  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 424 (S.D.N.Y. 2001).  "To encourage or tolerate unrestrained accusations of [wrongdoing] to be turned into sport and profit not only minimizes the perceived infamy and wrongfulness of [the alleged misconduct], but also depreciates the real hardships that unfounded charges visit upon the undeservedly maligned persons whose names and livelihoods may be placed in the balance."  *Id*. at 424–25.

This Court has the authority to order this discovery before deciding this motion.  Section 1782 and the Federal Rules of Civil Procedure vest the Court with broad discretion to dictate the sequence of discovery in the interest of fairness and to further the truth-seeking mission of discovery.  *Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").  The Second Circuit has specifically encouraged "district judges to fashion creative means" of protecting a party from abusive discovery while still serving the aims of Section 1782.  *Euromepa S.A. v. R.*

*Esmerian, Inc.*, 51 F.3d 1095, 1101–02 (2d Cir. 1995); *see also* S. Rep. No. 88–1580, § 9,

reprinted in 1964 U.S.C.C.A.N. at 3788 (noting that § 1782(a) "leaves the issuance of an

appropriate order to the discretion of the court which, in proper cases, may refuse to issue an

order or may impose conditions it deems desirable.").  For example, in *Malev*, the Second Circuit

suggested that the district court order the petitioner to draft a discovery plan and return to the

foreign court for a relevance determination before 1782 discovery could proceed.  964 F.2d at

102.  The remedy sought here is much less burdensome than that suggested in *Malev*.  Mr.

Salisbury merely asks that IMR produce documents already in its possession: the thumb drive

and investigator reports on which its *Ex Parte* Application is premised.

**B.      IMR's *Ex Parte* Application Does Not Meet the Statutory "For Use" Requirement**

To be "for use" in a foreign proceeding, the evidence sought must be "something that will

be employed with some advantage or serve some use in the proceeding."  *Mees*, 793 F.3d at 298.

"[D]iscovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the

proceeding, and the evidence would increase the applicant's chances of success in the

proceeding."  *In re Asia Maritime Pacific Ltd.*, -- F. Supp. 3d --, No. 15-cv-2760 (VEC), 2015

WL 5037129, at *3 (S.D.N.Y. Aug. 26, 2015) (internal quotation marks and citations omitted).

IMR has not met this requirement—to the contrary, the discovery sought is not only irrelevant to

the underlying Dutch appeal, IMR appears to have filed this action as a pretext to obtain

discovery for the New York Action.  This is an abuse of Section 1782.

**1.      The Sought Discovery Is Not Relevant to the Dutch Appeal**

The discovery sought here cannot "increase" IMR's "chances of success in the

[underlying] proceeding," because IMR fails to establish that evidence of hacking, if it even

existed, would be relevant to the Dutch appeal.  Supp. Decl. of Koppenol-Laforce ¶¶ 6-8, 11-12.

Absent this showing, the evidence is simply immaterial and of no use in the Dutch

proceedings—"it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds*, *Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 120 n.7 (2d Cir. 2015).

IMR claims discovery from Mr. Salisbury "is relevant to whether ECVK engaged in inequitable conduct," but fails to explain what "inequitable conduct" is, or how it is a potential claim, defense, or issue before the Dutch Appellate Court.  Dkt. 2 at 16.  IMR's Dutch counsel, de Bree, asserts, without support, that "[l]itigants in the Netherlands owe a duty of 'full and frank disclosure'" and "must comport themselves in a fair and equitable manner in connection with the conduct of the litigation (the rule of 'fair play')."  Dkt. 8 ¶ 12.  The *Ex Parte* Application trumpets these same principles but fails to explain how they translate into any cognizable claim or defense in the Dutch proceedings.  *See* Dkt. 2 at 1-2, 13, 16.  Indeed, IMR identifies no allegedly hacked document relied on by ECVK in these proceedings, and even if it had, the Dutch Supreme Court has held that "there is no general rule that the court has to ignore evidence that has been improperly obtained."  Dkt. 33 ¶ 21; Supp. Decl. of Koppenol-Laforce ¶ 12.  "[A] request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement."  *Mees*, 793 F.3d at 299 n.10.

The filing of the New York Action further undermines IMR's claims that the discovery sought here is "for use" in the Dutch Action or some theoretical future foreign action.  Indeed, this and IMR's prior Section 1782 applications appear to have been mere pretexts for obtaining discovery for use in a domestic action.  IMR's subpoena should thus be quashed as an abuse of Section 1782.  *See In re Dominique Levy, L & M Galleries*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) ("if the district court determines that [an] application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is

free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation.") (citing *Euromepa*, 51 F.3d at 1101).

### 2.   IMR's "Contemplated" Proceedings Are Pretextual and Insufficient

IMR cannot salvage its petition by pointing to a theoretical future foreign action—especially where it has now filed an action in *New York* against ECVK, Mr. Salisbury, and others, based on mirror image allegations of hacking.  Dkt. 2 at 17.  In *Intel*, the Supreme Court explained that to obtain Section 1782 discovery "for use" in a planned future proceeding, the statute requires "that a dispositive ruling by the [tribunal] be within reasonable contemplation." 542 U.S. at 259.  As the Second Circuit has explained, "reasonable contemplation" means that "a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a *reasonable* time."  *Certain Funds*, 798 F.3d at 123.

IMR's claim that it "is contemplating and considering its options for initiating a new action" in the Netherlands (Dkt. 8 ¶ 14) is facially insufficient to show that such proceeding is within "reasonable contemplation," not to mention that such a proceeding is likely barred by the New York Action.  De Bree vaguely refers to a potential cause of action against ECVK and does not even suggest that any filing has been drafted or prepared based on these theoretical allegations of hacking and a smear campaign.  *Id.* ¶¶ 14-16.  While de Bree claims "IMR would seek damages on the ground that ECVK unlawfully hacked into IMR's computer systems in breach of IMR's privacy rights and disseminated the hacked information *to the detriment of IMR in the Dutch Action*," *id.* ¶16 (emphasis added), IMR has never identified any allegedly hacked document used or relied on by ECVK in the Dutch proceeding, much less to IMR's detriment. Supp. Decl. of Koppenol-Laforce ¶ 7.  Moreover, IMR offers no argument, much less any declaration, as to how the "hacking" alleged here could be the basis for a cause of action under Dutch law, and it could not be.  *Id.* ¶ 13.  *Cf. Bravo Express Corp. v. Total Petrochemicals &*

*Refining USA*, 613 F. App'x 319, 322–23 (5th Cir. 2015) (noting that the "reliable indications"

of a new action within reasonable contemplation include a sworn affidavit from petitioner's

counsel that an action will "be imminently filed," testimony that a claim of particulars had been

prepared, and an explanation of the potential claim setting forth "in great detail, the facts that

give rise to the prospective lawsuit.").[6]

In *Certain Funds*, the Second Circuit affirmed the denial of Section 1782 discovery

where petitioners merely alleged "that they had retained counsel and were discussing the

*possibility* of initiating litigation."  798 F.3d at 124 (emphasis in original); *see also In re Asia*

*Maritime Pacific*, 2015 WL 5037129, at *5 (denying Section 1782 discovery because "[t]he fact

that Petitioner is contemplating 'the *possibility* of initiating litigation' falls far short of an

'objective showing' that the proceedings are within 'reasonable contemplation.'").  As in *Certain*

*Funds*, the *Ex Parte* Application lacks any "concrete basis from which [the court] can determine

that the contemplated proceeding is more than just a twinkle in counsel's eye."  798 F.3d at 124.

Because IMR fails to show the discovery sought is relevant to the ongoing Dutch action,

or is objectively contemplating a planned *foreign* proceeding (or indeed that it even has a viable

cause of action in any future proceeding), it has not met the threshold "for use" requirement for

Section 1782 discovery.  Accordingly, Mr. Salisbury's motion to quash must be granted.

## C.    The *Intel* Discretionary Factors Favor Quashing IMR's Subpoena

IMR's request for discovery should be denied based on the discretionary *Intel* factors.

IMR does not dispute that Mr. Salisbury is ECVK's principal U.S. counsel, and thus this

---

[6] Though IMR's *Ex Parte* Application alludes to a cause of action based on a "smear campaign" (Dkt. 2 at 17), de Bree makes no mention of any such contemplated action and IMR does not even identify any articles that advance inaccurate or untrue allegations about the company, much less any connection between ECVK and the publication of such articles.  Supp. Decl. of Koppenol-Laforce ¶ 8.  Moreover, IMR offers no argument, much less any declaration, as to how the "smear campaign" alleged here—that is, the disclosure of accurate facts to the press—could be the basis for a cause of action under Dutch law.

19

application is effectively an attempt to obtain discovery from "a participant in the foreign

proceeding," as well as "an attempt to circumvent foreign proof gathering restrictions."  In

addition, IMR's requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.

### 1.   IMR's Subpoena Is an Improper End-Run Around Party Discovery

Mr. Salisbury's October 9 brief addresses the first factor in detail.  Because IMR's

petition is nothing more than thinly disguised party discovery from ECVK, the petition should be

denied.  The improper nature of IMR's petition is even more obvious now that IMR has filed suit

against Mr. Salisbury in New York State Court.  *See In re Mare Shipping Inc.*, No. 13 Misc. 238,

2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013) (denying Section 1782 discovery from

counsel for party in underlying action); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194

(S.D.N.Y. 2006) (denying Section 1782 discovery from counsel for party because all documents

sought were within the foreign tribunal's reach).

The only possible reason for IMR's failure to seek this discovery in the Dutch action is

that it "is so certain that its request will be rejected in" the Netherlands that it has resorted to

filing Section 1782 applications "without even giving the [Dutch] tribunal an opportunity to

rule."  *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *6 n.4

(S.D.N.Y. Nov. 8, 2013).  IMR's reliance on *In re Chevron Corporation* to argue that there is no

barrier to discovery from counsel to parties in foreign litigation is misplaced not only because the

respondent there did not make this argument but also because the *Chevron* court found that the

attorney's role there was more that of a spokesperson and public relations advisor to the

plaintiffs in the foreign lawsuit than that of counsel.  749 F. Supp. 2d 141, 167 (S.D.N.Y. 2010),

*aff'd*, 409 F. App'x 393 (2d Cir. 2010).  IMR's reliance on *In re Veiga* is similarly misplaced.

*See* 746 F. Supp. 2d 8, 23 (D.D.C. 2010) (permitting discovery from *prior* counsel).

**2.    IMR's Sweeping Document Requests Are Unduly Invasive and Burdensome**

Mr. Salisbury's Memorandum of Law analyzed the invasive and burdensome nature of IMR's document requests. *See* Dkt. 28, at 15-19. IMR has since agreed to narrow those requests (Ex. 48 at 3), but does not go far enough, sweeping in clearly privileged communications.

First, IMR's request for "*[a]ll documents and communications concerning* Rinat Akhmetshin's engagement by or work for [Salisbury & Ryan] in connection with [Salisbury & Ryan's] work for ECVK" is overbroad. Ex. 48 at 3, Request No. 1. There is no dispute that Mr. Akhmetshin was a consulting expert and investigator as expressly determined in the Washington DC 1782 Action; the requested documents are thus largely privileged or protected work product. *See In re Grand Jury Subpoena*, 282 F.3d 156, 161 (2d Cir. 2002) ("[T]he work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information."); *In re Grand Jury Proceeding*, 79 F. App'x 476, 477 (2d Cir. 2003) ("[T]he attorney-client privilege may extend to communications with a third party, such as [a]. . . private investigator hired to assist in the rendition of legal services."). Mr. Salisbury requested that IMR narrow this request to documents and communications regarding the scope of Mr. Akhmetshin's engagement and the type of work performed, but IMR refused. Ex. 48 at 4.

IMR's second request, for "[a]ll documents and communications concerning any hacking or unauthorized accessing of documents concerning IMR, Shaft Sinkers, ENRC, and/or the Trio" is also overbroad because it is not limited to alleged hacking *by or at the direction of* ECVK or Mr. Salisbury, and because it is extended to third parties to the Dutch action—Shaft Sinkers, ENRC, and the Trio. IMR's third request is similarly overbroad, seeking "[a]ll communications concerning IMR, Shaft Sinkers, ENRC, and/or The Trio" with journalists and specific third parties (who are mostly journalists). IMR has no explanation for how the requested documents

21

are relevant to potential claims in the Dutch proceedings.  Courts consider the "probative value

of the requested materials" when determining "whether the requests are unduly burdensome."  *In

re Hornbeam Corp.*, No. 14 Misc. 424-P1, 2014 WL 8775433, at *5 (S.D.N.Y. Dec. 24, 2014).

Moreover, when, as here, the intrusion into attorney-client privilege and work product protection

is not justified by the "limited probative value" of the sought evidence, courts have ruled in favor

of granting the motion to quash Section 1782 applications.  *In re Okean B.V.*, 60 F. Supp. 3d

419, 428 (S.D.N.Y. 2014) ("production of these materials . . . for use in the Dutch litigation

would not only be burdensome; it would offend core tenets of our legal system (and those of

Russia and Ukraine), which each respect a client's privileged communications with counsel.").

### 3.      IMR's "Expected" Reliance on the Crime Fraud Exception Is Unfounded

Acknowledging Mr. Salisbury's valid work product and privilege claims over the

discovery, IMR states that it "expects that it would argue against application of the privilege

based on the crime fraud exception."  Dkt. 2 at 23 n.9.  IMR's "expected" invocation of the

crime-fraud exception is unsupported by the law or the facts.  In the Second Circuit, "[a] party

wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a

showing of probable cause to believe that a fraud or crime has been committed and that the

communications in question were in furtherance of the fraud or crime."  *United States v. Jacobs*,

117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 134 S.

Ct. 2384, 189 L. Ed. 2d 411 (2014).  Here, there is no such reasonable basis.  Indeed, there is not

a single identified instance of hacking—just the non-sequitur that ECVK obtained documents

regarding IMR, therefore ECVK must have hacked IMR.  As this Court has held, "[t]here is no

basis in the law to find that a complaint asserting fraud or other wrongdoing automatically

vitiates the privilege.  If allegations alone could lead to such a result, the attorney-client privilege

would be weak indeed."  *United States v. Levin*, No. 15 Cr. 101 (KBF), 2015 WL 5838579, at *3

22

(S.D.N.Y. Oct. 5, 2015).

In the absence of any evidentiary support for the crime fraud exception, IMR will no doubt rely on the D.C. District Court's Order that seven email threads withheld  after ECVK asserted privilege over its consulting expert's communications should be produced pursuant to the crime-fraud exception.  As explained above, that Order was entered without the benefit of a complete factual record.  Although ECVK intervened to assert its privileges, in order to avoid waiver, it did not explain the communications in detail.  Applying the D.C. Circuit's less stringent standard for the crime-fraud exception, which only requires "evidence *that if believed by a trier of fact would establish [that some violation was] ongoing or immanent*" and that the attorney-client communications were used in furtherance of that scheme, *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007), the court accepted IMR's "hacking" allegations as true despite the utter lack of extrinsic evidence, and then erroneously assumed that unexplained references ("friend," "project," and "thing") in the emails supported IMR's "hacking" allegations.  Ex. 41 at 15.  This is not the correct standard in the Second Circuit, which requires the party invoking the crime-fraud exception to demonstrate "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof."  *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994).  Moreover, the D.C. District Court was not informed of IMR's 30-day document destruction policy or its wholesale destruction of documents in 2012, which render its hacking claims all the more unlikely.  ECVK intends to seek a modification of the Court's Order based on this recently discovered evidence.  The D.C. District Court did exactly what this Court has warned against: "[I]f one starts off with the premise, as [petitioner] does, that there was a fraudulent scheme afoot, the documents contain stray turns of phrase or factual particulars that can be woven into a broader tale of fraud.  But if

23

one starts off with the correct assumption, which is that the burden of proving the crime-fraud exception is on the entity seeking to defeat the privilege, the documents are manifestly insufficient to show any such fraud." *In re Okean B.V.*, 60 F. Supp. 3d at 432.

Following the Court's order, rather than appeal, ECVK and Mr. Akhmetshin agreed to produce the documents and explain their meaning, including identifying Mr. Ahkmetshin's sources for documents about IMR, significantly, the former Prime Minister of Kazakhstan, whose identity Mr. Akhmetshin had sought to protect by referring to him as "my friend" in emails. After disclosing the documents, both Mr. Salisbury and Mr. Akhmetshin explained in sworn declarations that the "project" referred to Mr. Kazhegeldin's collection of materials about the Trio, while the "thing" referred to the files he was going to give Mr. Akhmetshin. Exs. 50, 51. In light of this affirmative evidence of an innocent, not to mention more plausible, explanation, IMR cannot possibly meet its burden to show the applicability of the crime-fraud exception, either under the D.C. Circuit's permissive standard or the Second Circuit's more stringent one. Simply put, these facts establish neither a crime nor a fraud.

**D.     Mr. Salisbury Is Entitled to Reciprocal Discovery Regarding IMR's Attempted Bribery and Witness Intimidation in Connection with the Dutch Proceeding**

Having availed itself of this Court's jurisdiction and put allegations in the underlying foreign disputes at issue, IMR opened the door to reciprocal Section 1782 discovery regarding its malfeasance in connection with these disputes. As set forth in Mr. Salisbury's October 9 brief, there is ample reason to believe that IMR possesses relevant materials, and there is objective evidence corroborating their existence. If this Court permits IMR to proceed with discovery here, it should order reciprocal discovery to avoid giving IMR an unfair advantage in the Dutch proceeding. *See In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (upholding a "carefully craft[ed] . . . order for reciprocal discovery. . . in light of the underlying dispute between [the parties].").

The topics for which Mr. Salisbury seeks reciprocal discovery are set forth in the attached Ex. 49.  First, IMR should be ordered to produce documents regarding the interactions by it or its agents with Mr. Chernyshev, EuroChem's former in-house attorney.  As set forth in Mr. Cherneyshev's detailed declaration, various individuals contacted him purportedly from a recruiting company, seeking information about ECVK, emailing him a detailed set of questions regarding ECVK's litigation strategy represented to be "exactly as I got it from our lawyers." Dkt. 31 ¶¶ 27-29; Dkt. 31-9.  Second, IMR should also be ordered to produce documents pertaining to its interactions with former employees of Shaft Seekers who have offered testimony in the Dutch Appellate Action.  IMR has threatened legal retribution against these witnesses if they do not withdraw their testimony, which potentially constitutes witness tampering.  Third, IMR has demonstrated awareness of privileged and confidential facts regarding ECVK and its litigation strategy.  *See* Dkt. 35 ¶ 11.  IMR should be ordered to produce any documents regarding how it came into possession of this sensitive information.

## IV.    Conclusion

For the reasons set forth above, Mr. Salisbury respectfully requests that the Court quash the Subpoena in its entirety.  If it does not do so, Mr. Salisbury respectfully that the Court order immediate limited discovery regarding the basis for this *Ex Parte* Application, and reciprocal discovery as set forth in Exhibit 49.

Dated: New York, New York
      November 16, 2015

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

_____

Robert F. Serio
Avi Weitzman
Anne Champion
200 Park Avenue
New York, New York 10166
212.351.4000

_Attorneys for Respondent Patrick Salisbury_