# Exhibit 46

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: )
)
APPLICATION OF INTERNATIONAL )
MINERAL RESOURCES B.V. FOR AN ORDER ) 1:14-MC-00340
TO TAKE DISCOVERY PURSUANT TO 28 ) JUDGE KESSLER
U.S.C. § 1782 ) Assigned: April 3, 2014
) Miscellaneous
)
Applicant. )

## DECLARATION OF VALERY SIDNEV

Pursuant to 28 U.S.C. § 1746, I, Valery Sidnev, declare under penalty of perjury as follows:

1. I am the General Counsel of JSC MCC EuroChem ("EuroChem"), the corporate parent of EuroChem Volga-Kaliy LLC ("ECVK"). I have been with EuroChem since 7 August 2009.

2. I make this declaration in support of ECVK's response to the motion of International Mineral Resources B.V. ("IMR") to Compel Production of Documents and Additional Day of Deposition, based on my personal knowledge following reasonable inquiry.

3. I am a legal counsel practicing law in the Russian Federation. Prior to my employment with EuroChem, I practiced law at the prominent U.S. law firm Baker Botts L.L.P., first in their Baku office in Azerbaijan (from February 1999 to July 2005), and then in Moscow (from August 2005 to February 2006). I then served as a chief legal counsel at Rusal, at that time the world's largest aluminum company headquartered in Moscow (from March 2006 to August 2007), then as a Head of legal finance and M&A at SUEK, the biggest Russian steam

coal producer (from September 2007 to March 2009) and as the Head of Corporate Practice at Vegas Lex, a leading Russian law firm (from April 2009 to August 2009), before joining EuroChem as its General Counsel in August 2009.

4. As EuroChem's General Counsel, I am in charge of its Legal Department. The department has more than 70 employees and oversees several hundred legal actions in any given year. I am also responsible for retaining and instructing the outside counsel that represents EuroChem or its subsidiaries in some of those cases.

5. EuroChem is a subsidiary of EuroChem Group AG ("EAG"), a Swiss-based company and one of the largest fertilizer producers in the world, with operations in numerous countries and over $5 billion in annual revenues. EuroChem produces nitrogen and phosphate fertilizers — two of the three essential plant nutrients. In 2005, EuroChem decided to develop its own mineral base for producing potassium — the third essential plant nutrient. Potassium is an important strategic raw material critical for increasing agricultural productivity worldwide. Developing the potassium segment would make EAG one of only four companies in the world that produces all three essential nutrients. Doing so remains one of EAG's and EuroChem's main strategic goals.

6. To produce potassium fertilizer, EuroChem had to acquire access to potash ore. So, in 2005, EuroChem acquired a license to develop a large potash deposit in Southern Russia. During 2006 and 2007, EuroChem conducted the first of the three phases of geological exploration of the licensed site. By August 2007, EuroChem completed the first phase of its geological exploration of the deposit and was planning the development of an integrated mining-and-processing facility on the site of the deposit (the "Project"), to be carried out by its subsidiary ECVK. EuroChem planned to invest over $2 billion in the first phase of the Project

which would have resulted in initial production capacity of 2.3 million tons of potash per year commencing in 2014.

7. In the fall of 2007, ECVK commenced negotiations with a South African shaft-sinking company named Shaft Sinkers (Pty) Ltd. for the design and construction of one of the two deep mining shafts required for the extraction of potash. The contract for the design of the shaft between Shaft Sinkers and ECVK was concluded in December 2007, and the main $350 million contract for the building and construction works was concluded in July 2008.

8. However, by the end of 2011, after almost four years of futile efforts accompanied by numerous shaft floodings and collapses, instead of the 1117-meter (over 3000-feet) deep shaft that Shaft Sinkers were supposed to build, ECVK ended up with a 93-meter deep, flooded hole in the ground, having incurred $282 in wasted costs, and facing the prospect of starting the sinking anew using a completely different technology, with an attendant significant production delay and lost profits in excess of $700 million.

9. ECVK suspended any further work by Shaft Sinkers in December 2011 and terminated it from the Project in early 2012. ECVK's subsequent investigation revealed that Shaft Sinkers had (i) fraudulently induced ECVK to enter into the $350 million contract that it knew it would not be able to complete; (ii) bribed ECVK's Chief of the Mine Construction Division overseeing Shaft Sinkers' work on the Project; and (iii) committed massive procurement fraud.

10. In March 2012, ECVK retained Salisbury & Ryan LLP ("S&R"), a U.S. law firm based in New York, to represent ECVK in its dispute with Shaft Sinkers. S&R reported to only me and to EuroChem's Chairman of Board of Directors and CEO. S&R served as ECVK's lead counsel in the arbitration proceedings against Shaft Sinkers filed in October 2012 before the

Swiss Chambers' Arbitration Institution in Zurich and the International Chambers of Commerce in Paris, as well as in the lawsuit filed against IMR in the Dutch court in March 2013.

11. For purposes of its engagement, S&R had the authority to hire testifying and consulting experts without advance notice to EuroChem or its prior approval. This is my typical practice as I prefer not to micro-manage cases unduly and, rather, prefer to rely on our outside counsel, particularly in cases pending in foreign jurisdictions.

12. Among such consulting experts retained by S&R on EuroChem's behalf was Mr. Rinat Akhmetshin. I understand from S&R that they retained Mr. Akhmetshin in July 2012. At that time, I was not aware of or involved in S&R's decision to retain Mr. Akhmetshin, nor was anyone else at EuroChem. I did not know, or even know of, Mr. Akhmetshin.

13. I first heard Mr. Akhmetshin's name and learned about his engagement by S&R in early September 2012 when Mr. Patrick Salisbury, S&R's senior partner, suggested a meeting with Mr. Akhmetshin. The purpose of the meeting was to discuss Mr. Akhmetshin's strategic communication proposal, in anticipation of ECVK filing claims against Shaft Sinkers and the expected press coverage of the dispute. I then called Mr. Akhmetshin and had a brief conversation with him to arrange the meeting but had no substantive discussions.

14. That meeting took place on September 19, 2012, in EuroChem's Moscow offices. Members of EuroChem's Legal and Public Relations departments, EuroChem's director responsible for corporate security, an attorney from S&R, and Mr. Akhmetshin attended the meeting. This was the first and last time I saw Mr. Akhmetshin.

15. During the meeting, Mr. Akhmetshin described his strategic communication proposal. This was the only subject that we discussed. Mr. Akhmetshin did not discuss his consulting work for S&R. And Mr. Akhmetshin did not convey any documents or information at

the meeting about IMR or any companies or people related to IMR. He also did not describe any efforts in which he was then engaged or had been engaged on S&R's behalf, nor did anyone ask him to.

16. At the meeting, the members of EuroChem's Legal and Public Relations departments rejected Mr. Akhmetshin's proposal because we decided that ECVK would keep a low media profile and simply respond to press inquiries as they arose, rather than take a more proactive approach proposed by Mr. Akhmetshin.

17. I have not seen or communicated with Mr. Akhmetshin since that meeting. In May 2013, Mr. Salisbury told me that Mr. Akhmetshin's engagement was terminated by S&R at the request of Mr. Melnichenko, the Chairman of Board of Directors of EuroChem, for the reasons described in the declaration of Patrick Salisbury submitted herewith and not because of any concern or allegation of any improper conduct by Mr. Akhmetshin.

18. Until the application for discovery by IMR, I had not heard of any allegation that Mr. Akhmetshin hacked IMR's computers or otherwise improperly accessed or obtained confidential information from IMR. I kept myself abreast of the developments in the Dutch litigation, and to the best of my knowledge IMR had never brought up this issue in the course of that litigation prior to such application for discovery.

19. To respond directly to IMR's allegations about Mr. Akhmetshin, I never commissioned, authorized, or knew about any such supposed hacking of IMR by Mr. Akhmetshin. To the best of my knowledge and belief nobody else at EuroChem or ECVK ever did. Neither EuroChem nor ECVK would ever tolerate, let alone request or encourage, improper behavior by its outside counsel or anyone retained by outside counsel.

I declare under penalty of perjury under the laws of the United States that the foregoing

is true and correct.

Dated: 17 June 2015
Moscow, Russian Federation

_____
Valery Sidnev
General Counsel,
JSC MCC EuroChem

I clarify the signature
Employee Service Manager
Bulatskaya Anna
17.06.2015