# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

APPLICATION OF INTERNATIONAL MINERAL
RESOURCES B.V. FOR AN ORDER TO TAKE
DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant.

Case No. 1:15-mc-00241

**INTERNATIONAL MINERAL RESOURCES B.V.'S OPPOSITION TO THE MOTION TO QUASH AND THE REQUEST FOR PRE-HEARING DISCOVERY**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
tel. +1 212 488 1200
fax. +1 212 488 1220

*Attorneys for Applicant International
Mineral Resources B.V.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................3

    I.       THE MOVANTS LOST IN THE DUTCH COURT.............................................3

    II.      THE MOVANTS LOST IN THE D.D.C..............................................................5

          A.       The Movants Lost on the Section 1782 Application in the D.D.C. .............5

          B.       The Movants Lost a Motion to Compel and a Crime-Fraud Ruling...........6

    III.     NEW LITIGATION....................................................................................8

LEGAL STANDARD......................................................................................................9

ARGUMENT ..............................................................................................................11

    I.       IMR'S DISCOVERY REQUESTS HAVE A "MODICUM" OF
           SUPPORT.........................................................................................11

          A.       There Is "At Least a Modicum" of Support for IMR's Discovery
                 Requests Related to Hacking .................................................................12

          B.       There Is "At Least a Modicum" of Support for IMR's Discovery
                 Requests Related to a Smear Campaign ..................................................16

          C.       There Is "At Least a Modicum" of Support for IMR's Claim that
                 Mr. Salisbury Possesses Potentially Relevant Information ......................17

    II.      IMR HAS SATISFIED THE THREE 28 U.S.C. § 1782 STATUTORY
           REQUIREMENTS.................................................................................18

          A.       It Is Undisputed that Mr. Salisbury is Found in the District ...................18

          B.       Discovery is "For Use" in the Dutch Action and the Dutch
                 Attachment Proceedings........................................................................18

           C.       It Is Undisputed that IMR Is an "Interested Person"...............................20

    III.     THE *INTEL* FACTORS WEIGH IN FAVOR OF DISCOVERY........................21

          A.       Mr. Salisbury Is Not a Party in the Dutch Proceedings ...........................21

          B.       The Dutch Courts Would Be Receptive to the Section 1782
                 Discovery ...........................................................................................23

    C.    IMR Is Not Circumventing Dutch Proof-Gathering Restrictions .............24

    D.    IMR Seeks a Narrow Subset of Information ................................................26

IV.    THE MOVANTS' DISCOVERY REQUESTS SHOULD BE DENIED ............28

    A.    The Movants' Novel Request for Pre-Discovery Discovery Should Be Denied....................................................................................................28

    B.    The Movants' Voluminous Discovery Requests Should Be Denied .........29

CONCLUSION.......................................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 N.Y.2d 144 (2002) ........................ 21

*Application of Esses*, 101 F.3d 873 (2d Cir. 1996) .............................................. 22, 29

*Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) ........................................ 27

*Brandi-Dohrn v. IKB Deutsche Inustriebank AG*, 673 F.3d 76 (2d Cir. 2012) ..................... 11, 28

*Bussey v. Phillips*, 419 F. Supp. 2d 569 (S.D.N.Y. 2006) ............................................. 12

*Chevron v. Donziger, et al.*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) ........................................ 21

*Euromepa S.A. v. R Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998) .................................................. 11

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ........................................ 25, 28

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) .................................................. 11

*In re Application of Aldunate*, 3 F.3d 54 (2d Cir. 1993) ............................................... 28

*In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ... 27

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96 (S.D.N.Y. 2008) ....... 20

*In re Chevron Corp.*, 749 F. Supp. 2d 141 (S.D.N.Y. 2010) ....................................... 24

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ........................................................ 10, 19

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................................... 27

*In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420 (S.D.N.Y. 2015) ..................... 11

*In re Republic of Ecuador*, 2011 WL 736868 (N.D. Cal. Feb. 22, 2011) .................................... 33

*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) ................................................ 20

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .............................................. *passim*

*Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ................................. 25

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ............................................................ 11

**Statutes**

28 U.S.C. 1782……………………………………………………………………………*passim*

International Mineral Resources B.V. ("IMR") respectfully submits this memorandum of law in opposition to the motion to quash and the request for pre-hearing discovery filed by respondent Patrick Salisbury and intervenor EuroChem Volga-Kaliy LLC ("ECVK") (together, the "Movants").

## PRELIMINARY STATEMENT

IMR filed this Section 1782 application to make four discovery requests. In response to these four discovery requests, the Movants filed more than 1,000 pages of submissions, which included 90 pages of briefing, factual allegations spanning 15 countries, and 73 separate discovery demands. The Movants suggest that these voluminous submissions are necessary because there is no support for IMR's application, but buried in those 1,000+ pages are two key points. First, the Movants lost every single one of their substantive claims in the underlying foreign action. Second, the Movants lost a related Section 1782 application, lost a motion to compel, and lost a crime fraud ruling in the U.S. District Court for the District of Columbia ("D.D.C."). In short, the Movants' arguments were rejected by the foreign court and rejected by the D.D.C. And, as discussed below, they should be rejected here.

IMR's Section 1782 application arises out of a $1 billion litigation between IMR and ECVK in the Netherlands (the "Dutch Action"). In connection with that action, ECVK's New York-based lawyer, Patrick Salisbury, hired a former Soviet military counterintelligence officer named Rinat Akhmetshin. At the direction of Mr. Salisbury and ECVK, Mr. Akhmetshin hacked into IMR's computer systems and stole sensitive and confidential materials. Mr. Akhmetshin then disseminated the stolen materials and other negative information to journalists and third parties as part of a smear campaign against IMR. ECVK also used IMR's confidential information in connection with the Dutch Action and cited to news articles written by publications linked to Mr. Akhmetshin.

1

For the last year and a half, IMR has been litigating a parallel Section 1782 proceeding seeking discovery from Mr. Akhmetshin in the D.D.C.  In that proceeding, the court conducted an *in camera* review of 261 documents that the Movants withheld for privilege.  After its review, the D.D.C. concluded that the "overwhelming majority" of the documents were not privileged, found that a "great many" of the Movants' privilege assertions were "entirely frivolous," and ordered Mr. Akhmetshin to produce the vast majority of the documents.

In addition, the D.D.C. found that numerous withheld documents corroborated IMR's allegations of a hacking and smear campaign.  The D.D.C. found that there was "overwhelming evidence" of a smear campaign.  The D.D.C. also found that there was evidentiary support for IMR's hacking allegations, and explicitly held that 12 email chains between Mr. Akhmetshin and Mr. Salisbury constituted *prima facie* evidence of a crime or fraud.

In this proceeding, IMR is not asking the Court to make any factual findings about Mr. Salisbury's misconduct or adjudicate Mr. Salisbury's guilt or innocence.  The only relief IMR seeks here is the opportunity to gather more information.  Mr. Akhmetshin represented to the D.D.C. that he was no longer in possession of some of the relevant documents.  Mr. Salisbury represented to the D.D.C. that, with a couple of minor exceptions, he was Mr. Akhmetshin's only point of contact during the engagement, and that his client—ECVK—had virtually no relevant documents or information.  Because Mr. Salisbury claims to be the only person who would possess the missing documents, IMR seeks discovery from Mr. Salisbury to obtain the subset of information that IMR was unable to obtain from Mr. Akhmetshin.  This is a narrow request:  similar discovery requests directed to Mr. Akhmetshin yielded a total of 435 responsive documents.

Contrary to the Movants' suggestions, the burden imposed on a Section 1782 applicant is minimal.  IMR is not required to do something akin to winning a bench trial by a preponderance

of the evidence before making a simple discovery request.  And the Movants do not cite to a single case where a court ordered an applicant to engage in pre-discovery discovery.  To the contrary, under well-settled law, courts are encouraged to grant discovery as long as:  (i) the applicant has satisfied the three statutory requirements set forth in 28 U.S.C. § 1782; and (ii) the four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") weigh in favor of discovery.  When it comes to the discovery requests, all an applicant must show is that it seeks discovery in good faith and that its discovery requests have "at least a modicum of objective support."  For the reasons set forth in its application and below, IMR's discovery requests have "at least a modicum of objective support." Further, IMR has satisfied the three statutory factors and the four *Intel* factors weigh in favor of discovery.  Accordingly, the motion to quash should be denied.

Consistent with their practice in other litigations, the Movants include a litany of misleading allegations about miscellaneous individuals, entities, legal proceedings, and events, and attempt to attribute all of this alleged conduct to IMR.  IMR in no way concedes that it engaged in any misconduct.  But more to the point, these misleading allegations have no relevance to any of the legal issues before the Court, and the Movants' voluminous requests for reciprocal discovery on these topics should be denied.

## BACKGROUND

### I.    THE MOVANTS LOST IN THE DUTCH COURT

Although the motion to quash submissions reference nearly a dozen foreign legal proceedings, only two sets of proceedings are relevant here.  Both sets of proceedings involve Mr. Salisbury's client, ECVK.

*First*, there were two arbitration proceedings between a company called Shaft Sinkers (Proprietary) Limited ("Shaft Sinkers") and ECVK (the "Shaft Sinkers Arbitrations").  The Shaft

Sinkers Arbitrations related to a mining project in Russia that Shaft Sinkers and ECVK worked on together.  *Second*, there was a separate litigation in the Netherlands—the Dutch Action— between IMR and ECVK.  In the Dutch Action, ECVK argued that IMR should be held liable for any judgments entered against Shaft Sinkers.  (ECF No. 8-1.)  ECVK asserted multiple theories of liability, arguing, among other things, that IMR controlled Shaft Sinkers as an indirect shareholder and that all of Shaft Sinkers's conduct should be attributed to IMR.  (*Id.*)

In its filings with the Dutch court, ECVK included a litany of negative allegations about miscellaneous individuals, entities, legal proceedings, and events, and attempted to attribute all of this alleged conduct to IMR.  (*Id.*)  Many of these allegations involved a different company called Eurasian Natural Resources Corporation PLC ("ENRC"), and a group of three individuals that Mr. Salisbury refers to as the "Trio."  (*Id.*)  Many of the allegations about ENRC and the Trio, in particular, were accompanied by citations to negative articles that had appeared in the press.  (*Id.*) These allegations were not relevant to any of the legal issues before the Dutch court, but ECVK presumably included them to paint IMR in a negative light.

This tactic ultimately failed, and ECVK lost the Dutch Action.  The Dutch court rejected all of ECVK's theories of liability.  (ECF No. 8-2.)  The Dutch court explicitly found that IMR and Shaft Sinkers were separate entities and that IMR could not be held liable for Shaft Sinkers's conduct.  (*Id.*)  ECVK appealed the Dutch court's decision and that appeal remains pending.  In this Section 1782 action, IMR seeks discovery in aid of that appeal.[1]

---

[1] As IMR explained in the 1782 application that was granted by the Court, in appeals in the Dutch courts, new evidence may be introduced by either party.  Declaration of Robbert De Bree ("De Bree Decl. I") ¶ 11, ECF No. 8.  In addition, as explained further below, IMR also seeks discovery in aid of new litigation filed in the Netherlands.

## II.     THE MOVANTS LOST IN THE D.D.C.

### A.     The Movants Lost on the Section 1782 Application in the D.D.C.

On April 3, 2014, IMR filed a Section 1782 application in the D.D.C. seeking discovery from Mr. Akhmetshin.  In support of its D.D.C. application, IMR submitted two of the same declarations that IMR submitted in this case.  Those declarations describe the following events: (1) an IMR investigator personally witnessed and overheard a conversation at a London coffee shop during which Mr. Akhmetshin boasted about orchestrating the hacking of IMR's computers systems; and (2) IMR investigators inquired with a number of sources about whether those sources could obtain copies of documents supposedly hacked by Mr. Akhmetshin, and, in response, an anonymous source provided the investigators with a thumb drive containing apparently stolen IMR documents.  (*See*  ECF No. 3-5 ¶¶ 4-19; ECF No. 3-6 ¶¶ 5-10.)

Mr. Akhmetshin objected to IMR's D.D.C. application, making many of the same arguments that Mr. Salisbury makes here.  Mr. Akhmetshin denied that he had any involvement in a hacking and smear campaign.  *See* Opposition of Rinat Akhmetshin ("Akhmetshin Opp.") at 4-5, 9-17, *In re Application of International Mineral Resources B.V. For An Order To Take Discovery Pursuant To 28 U.S.C. § 1782* ("*In re IMR*"), No. 14-mc-340 (D.D.C. May 15, 2014), D.D.C. ECF No. 10[2]; Renewed Opposition of Rinat Akhmetshin ("Renewed Akhmetshin Opp."), *In re IMR*, No. 14-mc-340 (D.D.C. Nov. 17, 2014), D.D.C. ECF No. 19.  Mr. Akhmetshin also argued that IMR's subpoena was an attempt to circumvent the Dutch court, that the Dutch court would not be receptive to discovery, that the communications between Mr. Akhmetshin and Mr. Salisbury were privileged, and that the privilege issues would be too burdensome to resolve.  Further, in his filings, Mr. Akhmetshin included a litany of misleading allegations about miscellaneous individuals,

---

[2] Filings on the D.D.C. docket are referenced as "D.D.C. ECF No.__."

entities, legal proceedings, and events that had no relevance to the legal issues before the court. Akhmetshin Opp. at 1, 5-6, D.D.C. ECF No. 10.  Many of these allegations involved ENRC and the "Trio," and many of the allegations were accompanied by citations to negative articles that had appeared in the press.  *Id.*

After considering Mr. Akhmetshin's arguments, the D.D.C. categorically rejected them and found that IMR was entitled to seek discovery under Section 1782.  *See* ECF No. 3-11.  The court held that there was "simply no dispute" that IMR's application met all three statutory requirements under Section 1782.  *Id.*  The court also explicitly rejected Mr. Akhmetshin's arguments that the subpoena was too burdensome and that the subpoena should be denied on privilege grounds.  *Id.*

**B.     The Movants Lost a Motion to Compel and a Crime-Fraud Ruling**

After its Section 1782 application was granted, IMR moved forward with discovery.  Mr. Akhmetshin produced 127 documents in response to the subpoena, but refused to produce 261 other documents, arguing that they were privileged because Mr. Salisbury had hired Mr. Akhmetshin as a consulting expert.  *See* ECF No. 3-13 at  2-4, 14-16.  IMR moved to compel.

On August 19, 2015, after conducting an *in camera* review of all 261 documents, the D.D.C. concluded that the "overwhelming majority" of the documents were not privileged and that "a great many of Mr. Akhmetshin's (and [ECVK's]) assertions of privilege [were] entirely frivolous."  Memorandum Opinion ("Mem. Op.") at 2, *In re IMR*, No. 14-mc-340 (D.D.C. Aug. 19, 2015), ECF No. 49 (Mangold Decl. Ex. A).  The D.D.C. ordered Mr. Akhmetshin to produce 227 of the 261 documents, and *sua sponte* ordered Mr. Akhmetshin and ECVK to show cause why their assertions of privilege did not warrant Rule 11 sanctions.  *Id.* at 21.

In addition, the D.D.C. explicitly found that numerous withheld documents corroborated IMR's allegations of a hacking and smear campaign.  With respect to hacking, the D.D.C. found that 12 email chains between Mr. Akhmetshin and Mr. Salisbury constituted *prima facie* evidence of a crime or fraud, and ordered Mr. Akhmetshin to "produce all documents related to the alleged crime."  *Id.* at 15; *see also id.*at 14 (finding that IMR's hacking claims were "supported by e-mails between Mr. Akhmetshin and ECVK's counsel [Mr. Salisbury].").  With respect to the smear campaign, the D.D.C. found that, "[d]espite his assertions to the contrary, there is ***overwhelming evidence*** that Mr. Akhmetshin, in fact, engaged in strategic communications and public relations on ECVK's behalf."  *Id.* at 10 (emphasis added).

In response to the court's rulings and the order to show cause on the potential imposition of Rule 11 sanctions, the Movants filed a voluminous set of submissions attempting to explain away the crime-fraud emails, and asked the D.D.C. to modify its crime-fraud findings in light of these new explanations.  *See* Memorandum Order ("Rule 11 Order") at 2, *In re IMR,* No. 14-mc-340 (D.D.C. Nov. 18, 2015), ECF No. 61 (Mangold Decl. Ex. B).  "After wading through more than 80 pages of briefing from Mr. Akhmetshin and ECVK," the D.D.C. refused to modify its findings.  *Id.*  In fact, in another opinion issued the same day, the D.D.C. reiterated that there was "evidence to support IMR's allegations" of wrongdoing.  Memorandum Order ("Fees Order") at 5, *In re IMR,* No. 14-mc-340 (D.D.C. Nov. 18, 2015), ECF No. 60 (Mangold Decl. Ex. C).

With respect to their privilege assertions, the Movants argued that they should not be sanctioned under Rule 11 because their privilege claims were not made in bad faith.  Upon further consideration, the D.D.C. noted that there was a high standard for imposing Rule 11 sanctions *sua sponte*, and concluded that this "extreme punishment" was not warranted under the circumstances.  Rule 11 Order at 2, D.D.C. ECF No. 61 (Mangold Decl. Ex. B) ("Given the

extensive additional information provided by Mr. Akhmetshin and ECVK, the Court is convinced that the privilege objections raised by them were reasonable" such that sanctions were not warranted). However, in its order issued on the same day, the court reiterated that it "found the vast majority of Mr. Akhmetshin's assertions of privilege to be meritless" and "overbroad." Fees Order at 3 n.1 & 7, D.D.C. ECF No. 60 (Mangold Decl. Ex. C).

Although the D.D.C. ordered Mr. Akhmetshin to produce virtually all of the responsive documents in his possession, Mr. Akhmetshin represented to the D.D.C. that he was no longer in possession of some of the relevant documents because they were stored on a laptop that was allegedly stolen from him. ECF No. 3-23 ¶ 9. As such, IMR was unable to obtain all of the relevant information from Mr. Akhmetshin himself.

In the D.D.C., Mr. Salisbury repeatedly represented that he was the only other person who had information related to Mr. Akhmetshin's work. Both Mr. Salisbury and ECVK repeatedly represented that ECVK had virtually no knowledge of or information about Mr. Akhmetshin's engagement. Accordingly, in this Section 1782 proceeding, IMR seeks to obtain from Mr. Salisbury the subset of information that Mr. Akhmetshin could not provide. This is a narrow request: similar discovery requests to Mr. Akhmetshin yielded less than 500 documents.

## III.      NEW LITIGATION

In addition to the existing Dutch Action and the D.D.C. Section 1782 proceeding, IMR has initiated two new actions that relate to this litigation.

*First*, on November 12, 2015, IMR filed a complaint against Mr. Akhmetshin, Mr. Salisbury, Salisbury & Ryan LLP, and ECVK in the Supreme Court of New York seeking damages and other relief in connection with the hacking and smear campaign.

*Second*, on November 20, 2015, IMR initiated new proceedings in the Netherlands by a writ of summons against ECVK, alleging that ECVK is liable for the damages caused by the attachment of IMR's assets in connection with the Dutch Action (the "Dutch Attachment Proceedings"). (Second Declaration of Robbert De Bree ("De Bree Decl. II") ¶ 16 & Ex. A.)  Among other things, the writ of summons alleges that ECVK improperly obtained leave to levy the attachment by misusing confidential information obtained by hacking into IMR's computer systems and planting negative stories about IMR in the press so that those stories could later be cited in its attachment application. *Id.* ¶ 17 & Ex. A.  IMR seeks damages and other relief from ECVK for defamation and for the losses associated with the freezing of its assets.  *Id.*

In light of this new action, IMR no longer seeks Section 1782 discovery in aid of Contemplated Dutch Proceedings, and instead seeks the same discovery in aid of the Dutch Attachment Proceedings.

## LEGAL STANDARD

The Movants seem to suggest that IMR must do something akin to winning a bench trial by a preponderance of the evidence before being entitled to discovery.  Further, the Movants suggest that the Court should be required to (i) make detailed findings of fact on at least 29 different topics ranging from the noise level in a coffee shop to the timeliness of forensic note-taking (ECF No. 37 at 20-22); (ii) make a slew of credibility determinations about witnesses presented by both sides (Memorandum of Law in Support of Pre-Hearing Discovery and to Supplement Respondent's Motion to Quash and for Reciprocal Discovery Related to the Subpoena Dated August 10, 2015 ("Supp. to MTQ") at 12-14; ECF No. 37 at 13); (iii) reconcile statements of competing forensic experts (Supp. to MTQ at 12-13); and weigh all available evidence to make an ultimate determination regarding which side's theory of the case is more

9

plausible (*see id.* at 14).  In other words, the Movants suggest that IMR must fully litigate and win its foreign claim in a U.S. court before being permitted to take discovery.  That is not an accurate description of the legal standard.

To the contrary, the legal standard for granting discovery under Section 1782 is extremely permissive.  Section 1782 "has the twin aims of 1) providing equitable and efficient means to assist parties engaged in international litigation and, by so doing, 2) inviting foreign countries to provide similar assistance to our courts."  *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002).  As the Second Circuit has noted, "Congress has expressed its aim that the statute be interpreted broadly."  *Id.* at 180.  Thus, under well-settled law, a Section 1782 applicant is entitled to discovery as long as it can make threshold showings that (i) the three statutory requirements set forth in 28 U.S.C. § 1782 are satisfied; and that (ii) the four factors set forth by the Supreme Court in *Intel* weigh in favor of discovery.  *See e.g.*, *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015); *Brandi-Dohrn v. IKB Deutsche Inustriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012); *In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420 at *4 (S.D.N.Y. 2015).

Notably, none of these threshold showings relates to the substance of the underlying foreign claims.  There is no requirement that an applicant submit to the U.S. court all the evidence it plans to introduce in the foreign action.  There is no requirement that the applicant demonstrate a likelihood of success on the merits of its foreign claim.  And there is certainly no requirement that an applicant fully litigate and win its foreign claim in the United States before obtaining discovery.  *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[Respondent's] contention that he was entitled to respond to the § 1782 application both factually and legally and have his response considered by the district court as part of its plenary consideration of the application is without merit") (internal citations omitted).  While it may be

10

helpful for an applicant to briefly explain the argument it will make in the foreign court, it is the foreign court that will ultimately weigh all the evidence and rule on the merits of the claim under foreign law. *Euromepa S.A. v. R Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998) ("In the exercise of its discretion, the district court should not attempt to conduct a detailed analysis of foreign law").

For these reasons, the amount of evidence that a Section 1782 applicant must provide in support of a discovery request is minimal. As ECVK notes in its brief (ECF No. 37 at 13), discovery is appropriate as long as the discovery requests "have ***at least a modicum of objective support***." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 592 (S.D.N.Y. 2006) (quoting *Lituma v. United States*, No. 04 Civ. 8955, 2005 WL 1705088, at *2 (S.D.N.Y. July 18, 2005)) (emphasis added); *see also* MODICUM, Black's Law Dictionary (10th ed. 2014) (defining "modicum" as a "small amount"). While courts should confirm that the discovery requests are not a "fishing expedition," discovery is generally encouraged as long as the applicant can show that it seeks the discovery in good faith. *Bussey*, 419 F. Supp. 2d at 592 (internal citations omitted); *see also In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007).

## ARGUMENT

In this case, discovery is appropriate because (1) IMR's discovery requests have "at least a modicum of objective support"; (2) IMR has satisfied the three 28 U.S.C. § 1782 statutory requirements; and (3) the *Intel* factors weigh in favor of granting discovery. Accordingly, the motion to quash should be denied. The Movants' novel request for pre-discovery discovery, and the Movants' other 70+ discovery demands, should also be denied.

### I.     IMR'S DISCOVERY REQUESTS HAVE A "MODICUM" OF SUPPORT

The Movants argue that IMR's discovery requests "lack[] any factual basis."  ECF No. 37 at 2.  IMR disagrees.  IMR's revised subpoena contains three discovery requests aimed at obtaining information about whether IMR was the victim of a hacking and smear campaign. There is "at least a modicum of objective support" for these requests.  In addition, IMR has a good faith basis to believe that Mr. Salisbury has information that could bear on these two topics. Accordingly, IMR is entitled to seek discovery from Mr. Salisbury.

### A.   There Is "At Least a Modicum" of Support for IMR's Discovery Requests Related to Hacking

The Movants argue that IMR's "alleged hacking scheme . . . wholly lacks factual support" (*id.* at 2); that discovery in the D.D.C. "revealed not a single shred of evidence that Akhmetshin had actually hacked IMR's computers" (*id.*); that "nothing in [Akhmetshin's] documents or Akhmetshin's depositions backed up IMR's outlandish claims of hacking and theft" (*id.* at 7); and that discovery in the D.D.C. "failed to unearth any evidence corroborating Akhmetshin's role in the supposed IMR computer hacking scheme" ( *id.* at 14).  IMR disagrees with these assessments.

The D.D.C.'s crime-fraud ruling—in and of itself—demonstrates that there is "at least a modicum of objective support" for IMR's hacking allegations.  The D.D.C., not IMR, was the first to review the documents that Mr. Akhmetshin withheld.  The D.D.C., not IMR, was the first to come to the conclusion that a subset of these documents could be reasonably interpreted as evidence of hacking.  Some examples given by the D.D.C. include:

> Priv No. 54 (Mr. Akhmetshin writes, 'the project is already up and running and it is churning up the info.'); Priv No. 57 (To ECVK's counsel [Mr. Salisbury]: 'patrick, the indexing is done, can you, pls send me a list of the terms/names for a scan?'); Priv No. 67 ('dear patrick, looks like the work is finally completed.'); Priv No. 119 ('just spoke with the guy – he said they pulled everything there was available.  Need to go collect it some time after the holidays').

Mem. Op. at 14, D.D.C. ECF No. 49 (Mangold Decl. Ex. A).  Further, the D.D.C., not IMR, was

the first to explicitly identify documents corroborating IMR's allegations that Mr. Akhmetshin

had a thumb drive of confidential IMR documents:

> Priv No. 66 (Mr. Akhmetshin writes, 'i really hope to be able to have the thing in
> the next day or two.'); Priv No. 70 (Mr. Akhmetshin writes, 'plan to get that thing
> in London tomorrow, can take it anywhere, pls advise where should I go.'); Priv
> No. 121 ('i plan to collect the thing in london on wed this week and be traveling
> to msk after that . . . can drop the thing with you afternoon dec.10').

*Id.* at 14-15.  As the D.D.C. noted, a "reasonable fact finder could conclude that this object [the

'thing'] is the thumb-drive containing sensitive IMR files that IMR's agents later recovered in

London."  *Id.* at 15.  Thus, the only objective fact finder to evaluate this evidence found that it

was at least reasonable to infer that the evidence supported IMR's allegations.  And indeed, a

review of the 12 documents that the D.D.C. identified demonstrates that they could reasonably

be read to support IMR's claims.  *See* Declaration of Mary Beth Maloney in Support of

Respondent's Motion to Quash and for Pre-Hearing Discovery ("Maloney Decl.") Ex. 42.

    The Movants argue that the D.D.C. made its crime-fraud findings "without the benefit of

a complete factual record," and that the crime-fraud exception would cease to apply once they

provided new explanations for all of these documents.  Supp. to MTQ at 23-24.  However,

"[a]fter wading through more than 80 pages of briefing from Mr. Akhmetshin and ECVK," the

D.D.C. refused to modify its findings.  *See* Rule 11 Order at 2, D.D.C. ECF No. 61.  In fact, after

reviewing the Movants' submissions, the D.D.C. reiterated that there is "evidence to support

IMR's allegations" of wrongdoing.  Fees Order at 5, D.D.C. ECF No. 60 (Mangold Ex. C).

The D.D.C. noted that these emails were not "conclusive" evidence that Mr. Akhmetshin was

guilty of wrongdoing (*id.* at 5-6), but IMR is not required to show conclusive evidence of guilt in

order to obtain discovery.

In addition to the D.D.C.'s crime-fraud findings, there is other evidence that provides "at least a modicum of objective support" for IMR's hacking allegations. For example, IMR submitted the declaration of an investigator, Akis Phanartzis, who overheard Mr. Akhmetshin at a coffee shop boasting that he had orchestrated a hacking campaign against IMR. *See* Phanartzis Decl. ¶¶ 4-19, ECF No. 3-5. The Movants argue that "[Mr.] Akhmetshin's version of the events is wholly at odds with that of the investigator." ECF No. 37 at 21. However, when Mr. Akhmetshin was asked about the investigator's version of the events under oath, Mr. Akhmetshin stated the following:

> Q:    Phanartzis' affidavit states, the next morning, on January 30, 2014 at approximately 11:15 a.m., we observed Mr. Akhmetshin entering the Cafe Royal Coffee Shop on Regent Street. Do you see that?
> A:    I do see this.
> Q:    Have you ever been to the Cafe Royal Coffee Shop?
> A:    I believe I did visit that location.
> Q:    Were you there on January 30th, 2014?
> A:    Most likely, yes.
> Q:    Paragraph 12, At approximately 11:25 a.m., Mr. Akhmetshin was joined by an unidentified businessman who appeared to be in his 40s. Do you see that?
> A:    Yes, I do see it.
> Q:    And it says the businessman was carrying a laptop.
> A:    Uh-huh.
> Q:    Do you have an understanding as to who this businessman was?
> A:    It was a client in a research project I was doing.
> Q:    Who was the client?
> A:    This Israeli businessman, Mr. Halpert.
> . . .
> Q:    Okay. Paragraph 13 says, after exchanging pleasantries, Mr. Akhmetshin handed the businessman an external hard drive and stated that it contained internal documents and emails from IMR. Did you ever provide Mr. Halpert with an external hard drive of documents?
> A:    I believe I have given Mr. Halpert an external drive.

ECF No. 3-12 at 189:4-190:4; 190:11-19.  Based on this testimony, a reasonable person could

conclude that Mr. Akhmetshin's version of the events is not "wholly at odds with that of the

investigator."  ECF No. 37 at 21.

Similarly, the Movants argue that the investigator's statement that Mr. Akhmetshin

boasted about the hacking is "belied by Mr. Akhmetshin's own sworn testimony."  Supp. to

MTQ at 13.  However, when specifically asked if he told Mr. Halpert that he had hacked IMR's

computer systems, Mr. Akhmetshin stated the following:

> Q.  Did you tell Mr. Halpert that you had organized the hacking of IMR's
> computer systems?
>
> A.  I was engaged in salesmanship in that conversation.
>
> Q.  Did you tell Mr. Halpert that you had organized the hacking of IMR's
> computer systems?
>
> A.  I did never, ever organize hacking of any computer systems.
>
> Q.  Mr. Akhmetshin, I'm going to ask you to answer my question –
>
> A.  Please.
>
> Q.  – okay?  Did you tell Mr. Halpert that you had organized the hacking of
> IMR's computer systems?
>
> MR. SPERDUTO: Asked and answered.
>
> THE WITNESS: And I responded I never organized hackings of any
> computer systems.
>
> BY MR. COGAN:  Q.  Is there a reason you don't want to answer my
> question?
>
> A.  As I mentioned to you, I was involved in salesmanship.
>
> Q.  Okay.  In the course of your salesmanship, did you tell him that you had
> organized the hacking of IMR's computer systems?
>
> A.  Some exaggerated things might have been said at that conversation.
>
> Q.  Okay.  And do you think that one of the exaggerated things that might
> have been said was that you had organized the hacking of IMR's computer
> systems?
>
> A.  I don't have exact recollection of exact words which were said in that
> conversation, but I do remember very specifically that it was sales meeting.
> And in -- kind of in spirit of salesmanship, I might have exaggerated the

> providence or misstated the providence of the data which was provided to Halpert.

Declaration of Mary Beth Maloney in Support of Respondent's Motion to Quash and for Pre-Hearing Discovery ("Maloney Decl.") Ex. 37 at 201:20-203:7.  A reasonable person could read this evasive testimony—in which Mr. Akhmetshin did not deny that he told someone he hacked IMR's computer systems—and conclude that Mr. Akhmetshin did, in fact, boast to a client about orchestrating the hacking.  Although the Movants may dispute their meaning, the Phanartzis declaration and Mr. Akhmetshin's deposition testimony provide "at least a modicum" of support for IMR's allegations.  This evidence thus demonstrates that IMR is seeking discovery in good faith, particularly when it is considered in light of all of the other materials that IMR has submitted.

### B. There Is "At Least a Modicum" of Support for IMR's Discovery Requests Related to a Smear Campaign

The Movants argue that there is no support for IMR's smear campaign allegations.  *See, e.g.*, ECF No. 28 at 8 ("EuroChem never pursued any negative press campaign"); ECF No. 37 at 9 ("IMR fails to articulate an evidentiary basis" for its claim that ECVK "disseminated . . . information to the media in a further effort to tarnish IMR's reputation").  IMR disagrees with this assessment.

The D.D.C. found that there was "***overwhelming evidence*** that Mr. Akhmetshin, in fact, engaged in strategic communications and public relations on ECVK's behalf."  Mem. Op. at 10, D.D.C. ECF No. 49 (Mangold Decl. Ex. A) (emphasis added).  For example, in one email from Mr. Salisbury to ECVK's General Counsel, Mr. Salisbury stated, "'As I mentioned, Rinat [Akhmetshin] is advising on the international PR campaign we have been discussing . . . He has thoughts as to how we should proceed and can help your PR and IR people.'"  *Id.* at 8.  In

another communication cited by the D.D.C., Mr. Akhmetshin wrote to Mr. Salisbury, stating "'was great to see you, patrick.  Attached is the document i mentioned to you. pls send me your filings once they are ready and i will work on getting the story out.'"  *Id.* at 8-9.  In a third email that the D.D.C. described as a "smoking gun," Mr. Salisbury wrote to Mr. Akhmetshin at the end of his engagement, stating, "to avoid any further confusion, if you [Mr. Akhmetshin] receive any inquiries [from] the press or other outsiders about our case, just ask them to contact [ECVK's] press relations department directly.'"  *Id.* at 10.  Based on the foregoing, IMR has made the minimal showing required to obtain discovery on this issue.

### C.    There Is "At Least a Modicum" of Support for IMR's Claim that Mr. Salisbury Possesses Potentially Relevant Information

Finally, the Movants argue that "IMR cannot point to one objective fact linking Salisbury to the conduct for which he stands accused" (ECF No. 37 at 13); and that Mr. Salisbury "played no role in connection with the matter on which discovery is sought" (*id.*) (internal quotations omitted).  Again, IMR disagrees with this assessment.

IMR has a good faith basis to believe that Mr. Salisbury has information in his possession that could bear on whether there was a hacking or smear campaign. ███████████████

████████████████████████████████████████████████████████

*See* Maloney Decl. Ex. 42.  The D.D.C. also explicitly found that "the communications make clear that ECVK's counsel [Mr. Salisbury] had knowledge of Mr. Akhmetshin's alleged [hacking] activities taken on ECVK's behalf."  Mem. Op. at 15 n.6, D.D.C. ECF No. 49 (Mangold Decl. Ex. A).  Similarly, numerous documents cited by the D.D.C. as evidence of a smear campaign were emails between Mr. Akhmetshin and Mr. Salisbury, and Mr. Salisbury was the author of the document that the D.D.C. considered to be a "smoking gun."  *See id.* at 8-11.

Again, in this proceeding, IMR is not asking the Court to adjudicate Mr. Salisbury's guilt or

innocence.  The only relief IMR seeks here is the opportunity to gather more information.  IMR

includes the evidence above simply to demonstrate that there is a "modicum" of support for its

allegations, and to show that it is seeking discovery from Mr. Salisbury in good faith.[3]

## II.      IMR HAS SATISFIED THE THREE 28 U.S.C. § 1782 STATUTORY REQUIREMENTS

### A.      It Is Undisputed that Mr. Salisbury is Found in the District

Under the first statutory factor, a Section 1782 applicant must show that the person from

whom discovery is sought resides or is found within the district.  28 U.S.C. § 1782(a); *In re

Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the

district).  There is no dispute that the party from whom discovery is sought, Mr. Salisbury, is

present within the Southern District of New York.

### B.      Discovery is "For Use" in the Dutch Action and the Dutch Attachment Proceedings

Under the second statutory factor, a Section 1782 applicant must show that the discovery

is "for use" in a proceeding before a foreign or international tribunal.  28 U.S.C. § 1782(a).  The

"for use" requirement imposes a *de minimis* burden on the applicant to show that the

requested discovery has some relevance to the foreign proceeding.  *See In re Application

Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery*

---

[3] IMR believes that it has provided sufficient evidence to support its request for discovery.  However, if the Court is inclined to do a more detailed evaluation of all the evidence that can be presented in the foreign proceeding, IMR is of course willing to provide additional evidence and information.  Tellingly, the Movants claim that IMR did not find a "shred of evidence" in the D.D.C. (ECF No. 37 at 2), but they are actively preventing IMR from using some of that evidence here.  *See* Joint Stipulation, *In re IMR,* No. 14-mc-340 (D.D.C. Dec. 4, 2015), D.D.C. ECF No. 69 (stating that IMR filed a request to use "[m]aterial [d]esignated 'Confidential Information' by Rinat Akhmetshin" in this SDNY proceeding, and that Mr. Akhmetshin and ECVK "intend to oppose the relief sought by IMR").  To the extent that this additional information would be useful, this Court could always require the Movants to provide the evidence to this Court.

*from Dominique Levy, L&M Galleries ("In re Application of Sveaas")*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive"); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) ("the burden imposed upon an applicant is *de minimis*"). Relevance is "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Application of Sveaas*, 249 F.R.D. at 106-07 (internal quotations omitted). "Where relevance is in doubt, the district court should be permissive." *Id.* at 107 (citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)). Discovery should be granted if there is "'any possibility' that the information sought may be relevant" to the foreign proceeding. *See In re Application of Sveaas*, 249 F.R.D. at 107.

In this case, the requested documents and deposition testimony are "for use" in the Dutch Action and the Dutch Attachment Proceedings. *Cf.* Order Granting Application, ECF No. 3-11 (granting IMR's Section 1782 application seeking discovery from Mr. Akhmetshin because "there is simply no dispute" that the documents and deposition testimony requested are "for use" in the Dutch appeal). The Movants nevertheless argue that IMR's application is a pretext to obtain discovery "for use" in the New York action. This argument lacks merit for three reasons.

*First*, a plaintiff does not need evidence to file a complaint in the United States. To initiate a lawsuit, a plaintiff need only provide allegations and, under New York's "notice pleading" standard, the allegations required to survive a motion to dismiss are minimal. *See 511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 N.Y.2d 144, 152 (2002) ("The motion must be denied if from the pleadings' four corners of the complaint factual allegations are discerned which, taken together, manifest any cause of action cognizable at law"). In this case, IMR is not seeking discovery for the purpose of initiating U.S. litigation,

as IMR's New York complaint has already been filed.  The Movants suggest that it was somehow improper to file the New York action after uncovering evidence of potential misconduct in the Section 1782 context, but such follow up proceedings are permissible.  *See* Compl. ¶¶ 108, 149, 176, 210, 249-302, *Chevron v. Donziger, et al.*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) (No. 11 Civ. 0691) (discussing evidence obtained in Section 1782 proceedings in a new U.S. action).

*Second*, IMR does not need a pretext to obtain discovery for the New York action because IMR can just take discovery in the New York action.  There is nothing that IMR could gather in a Section 1782 proceeding that IMR could not gather in the New York action itself.  In fact, the discovery available in the New York action is much broader than the discovery available under Section 1782 because it is not limited to one respondent or one narrow set of topics.  IMR seeks a limited subset of discovery from Mr. Salisbury now because, after motions to dismiss, etc., are litigated in the New York action and IMR obtains discovery, it may be too late to submit that discovery in the Dutch proceedings.

*Third*, to the extent that the Court has any concerns about IMR's use of the discovery, the Court may enter a protective order preventing IMR from using the materials outside of the Dutch Action and the Dutch Attachment Proceedings without obtaining the Court's permission first.  A similar protective order was entered in the D.D.C.  *See* Protective Order, *In re IMR,* No. 14-mc-340 (D.D.C. November 17, 2015), D.D.C. ECF No. 58-1.

## C. It Is Undisputed that IMR Is an "Interested Person"

Under the third statutory factor, a Section 1782 applicant must show that the application is made by an interested person.  28 U.S.C. § 1782(a).  There is no dispute that, as the appellee in the Dutch Appeal and the plaintiff in the Dutch Attachment Proceedings, IMR qualifies as

an "interested person."  *See Application of Esses (In re Esses)*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam)  (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute").

## III.    THE *INTEL* FACTORS WEIGH IN FAVOR OF DISCOVERY

Contrary to Mr. Salisbury's contentions, the four *Intel* factors also weigh in favor of discovery.  *See* ECF No. 4 at 1 ("The Court also finds that the discretionary factors, as described in [*Intel*] weigh in favor of granting Petitioner's application").

### A.    Mr. Salisbury Is Not a Party in the Dutch Proceedings

Under *Intel*, this factor favors the applicant where the respondent is not a party in the foreign proceeding.  *See Intel*, 542 U.S. at 264.  In this case, Mr. Salisbury is not a party to either of the foreign proceedings.

It is undisputed that Mr. Salisbury is not a party to the Dutch Action.  Further, Mr. Salisbury is not counsel of record in the Dutch Action and is not licensed to practice before the Dutch court.  (De Bree Decl. II ¶ 9.)  The Movants argue that this factor should nevertheless weigh in their favor because IMR is using the subpoena as a pretext to obtain discovery from ECVK.  This argument lacks merit.  IMR is explicitly seeking discovery from Mr. Salisbury—not ECVK—based on the Movants' own representations about who has the relevant information. In the D.D.C., Mr. Salisbury submitted a declaration stating that:

- "S&R [Salisbury & Ryan LLP] retained Mr. Akhmetshin without any involvement or knowledge of ECVK" (ECF No. 3-18 ¶ 58);

- "ECVK was not aware of Mr. Akhmetshin's retention when it occurred and had virtually no direct contact with Mr. Akhmetshin" (*id.* ¶ 70);

- "ECVK never had any direct involvement with Mr. Akhmetshin" (*id.* ¶ 59);

- "At no time did EuroChem or ECVK control or direct Mr. Akhmetshin" (*id.* ¶ 61); and

- "Mr. Akhmetshin reported to me" (*id.*).

Further, ECVK repeatedly represented that it had virtually no knowledge of or information about Mr. Akhmetshin's engagement.  ECVK specifically represented that:

- "Salisbury & Ryan identified and retained Mr. Akhmetshin . . . without any involvement or knowledge of ECVK" (ECF No. 3-17 at 6);

- "Mr. Akhmetshin had had no previous contact with anyone at EuroChem or ECVK" (*id.*);

- "Mr. Akhmetshin did not meet or correspond with anyone at EuroChem or ECVK at the time of his retention" (*id.*);

- "Mr. Akhmetshin proceeded with his consulting work for Salisbury & Ryan, under their exclusive direction" (*id.* at 7);

- "All of Mr. Akhmetshin's work for Salisbury & Ryan was done at the law firm's request" (*id.* at 10); and

- "Mr. Akhmetshin was . . . supervised by, and reported to, Mr. Salisbury" (*id.*).

While IMR disputes the accuracy of these claims, IMR seeks discovery from Mr. Salisbury on the basis of these representations.  After repeatedly representing that ECVK does not have the relevant information, Mr. Salisbury cannot suddenly evade discovery by claiming that IMR should have sought the discovery from ECVK.

Further, courts in the Second Circuit confirm that taking Section 1782 discovery from a foreign opponent's lawyer is appropriate where, as here, the applicant seeks discovery regarding potential misconduct that took place in connection with the foreign proceedings and the lawyer possesses the relevant information.  *See In re Chevron Corp.*, 749 F. Supp. 2d 141, 161 (S.D.N.Y. 2010) (granting discovery from foreign opponent's New York attorney because "it is quite likely that the primary source of responsive material lies in [the New York attorney's] hands" and "[t]here is every reason to believe that [the New York attorney] is in a unique position to shed light on what in fact has happened in relation to this seemingly sordid tale"); *Lago Agrio*

22

*Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 395 (2d Cir. 2010) (affirming the district court order granting discovery "substantially for the reasons stated by the District Court").

### B.     The Dutch Courts Would Be Receptive to the Section 1782 Discovery

Under the second *Intel* factor, courts evaluate the "receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  The Second Circuit has made clear that the second *Intel* factor will be satisfied unless the **respondent** (*i.e.*, Mr. Salisbury) provides "authoritative proof that a foreign tribunal would **reject** evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added).  This is a high burden, as authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]"  *Id.*  Mr. Salisbury has not met that burden here.

As IMR explained in its application, Dutch courts have explicitly expressed their willingness to admit evidence obtained through the Section 1782 discovery process.  *See Convex cs. v. Duizendstraal cs.*, Court of Appeals (*Hof*) Amsterdam, 24 October 1996, NIPR 1997/120; *Alfred Mol v. Kinetics Technology International B.V.*, Supreme Court (*Hoge Raad*), 6 February 1998, NJ 1999, 479; (ECF No. 8 ¶¶ 17-18).  In addition, Article 152(2) of the Dutch Code of Civil Proceedings provides that evidence may be furnished by any means and that "the evaluation of evidence is left to the judgment of the court."  (De Bree Decl. II ¶ 14.)  Thus, both the case law and the Dutch Code of Civil Proceedings demonstrate that Dutch courts would be receptive to Section 1782 discovery.

With respect to the Dutch Action, the Movants claim that the Dutch court would not be receptive to evidence of hacking because IMR cannot identify a single stolen document that

ECVK used in that action.  To the contrary, IMR can identify at least two stolen documents that ECVK used in the Dutch Action.   In support of its position in the Dutch Appeal, ECVK submitted a number of exhibits, including Exhibit 320 and Exhibit 362.  (De Bree Decl. II ¶ 11.) ECVK's Exhibit 362 is a ten-page excerpt of a confidential IMR document.  (Declaration of Melanie Maugeri ("Maugeri Decl.") ¶ 8.)  The ten pages appearing in Exhibit 362 are identical to ten pages of a confidential IMR document that appears four times on the thumb drive.  *Id.* Similarly, ECVK's Exhibit 320, a 13-page document, is identical to a confidential document that appears six times on the thumb drive.  (Maugeri Decl. ¶¶ 6-7.)  Thus, even by the Movants' standards, this factor weighs in favor of IMR.   Further, IMR's discovery request should be granted precisely because it will allow IMR to identify whether there are other stolen documents that ECVK used.  (De Bree Decl. II ¶ 10.)

### C.   IMR Is Not Circumventing Dutch Proof-Gathering Restrictions

Under the third *Intel* factor, courts evaluate whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies."  *Intel*, 542 U.S. at 264-65. Courts typically weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith.  *See In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007); *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).  As discussed above, IMR has a good faith basis for making its discovery requests in this case.[4]

---

[4] The Movants' allegation that IMR somehow violated an obligation associated with filing *ex parte* submissions lacks merit.   First of all, the Movants fault IMR for failing to include Mr. Salisbury's D.D.C. declaration as an exhibit to its Section 1782 application, then cite to the docket entry where IMR included Mr. Salisbury's D.D.C. declaration as an exhibit to its Section 1782 application.  *See* Supp. to MTQ at 14 n.4 (citing ECF No. 3-18, which is Exhibit 18 to IMR's application).  Second of all, although IMR's Section 1782 application was granted on an

The Movants argue that IMR's discovery request should be denied because IMR failed to seek discovery from the Dutch courts in the first instance.  However, the Second Circuit has repeatedly rejected this argument:  the case law is clear that a Section 1782 applicant is not required to exhaust its discovery options in the foreign tribunal before seeking discovery in the United States.  *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("The district court concluded that . . . Malev should have first sought the requested discovery from the Hungarian court.  We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement of the sort imposed by the district court."); *Euromepa*, 51 F.3d at 1098 (noting the lack of a "quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court") (internal quotations omitted).

The Movants also argue that IMR's discovery request should be denied because the evidence sought would not be discoverable in the Dutch Action.  However, the Second Circuit has repeatedly stated that district courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable in the foreign proceeding.  *Brandi-Dohrn* 673 F.3d at 82 (noting unanimity among the Circuits that have ruled on the issue); *Euromepa* 51 F.3d at 1098 ("we have also rejected any implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country") (internal quotations omitted); *In re Application of Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) ("If Congress had intended

---

*ex parte* basis, IMR did not request *ex parte* relief in any of its application papers.  In fact, IMR was preparing to serve its application papers on Mr. Salisbury when the Court unexpectedly granted its application.  Because the order granting the application stated that "nothing in this Order shall be construed to have prejudicial effect on Respondent's right to file a motion to quash," and a motion to quash would functionally be equivalent to opposing the application, IMR did not request that the court vacate its order.

to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included the statutory language to that effect.").

### D.    IMR Seeks a Narrow Subset of Information

The fourth *Intel* factor favors the applicant as long as the requests for discovery are not unduly intrusive or burdensome.  *Intel*, 542 U.S. at 264-65; *In re Esses*, 101 F.3d at 876.   IMR has met that standard here.

Contrary to the Movants' contentions, IMR is not seeking Mr. Salisbury's work product from the Shaft Sinkers Arbitrations, IMR is not seeking the privileged materials of Mr. Salisbury's non-ECVK clients, and IMR is not going on a fishing expedition for documents related to ENRC and the Trio.  Rather, IMR seeks a narrow universe of documents regarding the engagement and retention of Mr. Akhmetshin and the related hacking and smear campaign, as well as a deposition in connection with this limited subject matter.  IMR expects the number of responsive documents to be relatively small:  similar requests directed to Mr. Akhmetshin yielded a total of only 435 responsive documents, including both privileged and non-privileged documents. Producing or logging this narrow subset of documents should not be unduly intrusive or burdensome.  *Cf.*  ECF No. 3-11 at 2 ("Mr. Akhmetshin claims that the Application is unduly burdensome and intrusive.  For the reasons given by the Applicant . . . his claim is unpersuasive.").

Despite the fact that its discovery requests were already quite limited, IMR made a good faith attempt to meet and confer with Mr. Salisbury's counsel in an effort to narrow the requests in response to Mr. Salisbury's concerns.  IMR's revised subpoena now seeks only:

1.    All documents and communications concerning Rinat Akhmetshin's engagement by or work for S&R in connection with S&R's work for ECVK.

26

2.      All documents and communications concerning any hacking or unauthorized accessing of documents concerning IMR, Shaft Sinkers, ENRC, and/or The Trio.

3.      All communications concerning IMR, Shaft Sinkers, ENRC, and/or The Trio with journalists and/or any of the following individuals:  Akezhan Kazhegeldin, Ed Lieberman, Daniel Balint-Kurti, Mark Hollingsworth, Simon Goodley, Kirstin Ridley, Ken Silverstein, Helen Thomas, Douglas Gillison, and Scott Horton.

(*See* Mangold Decl. Ex. D.)  Further, the subpoena does not seek any materials that duplicate documents in Mr. Akhmetshin's productions.  The Movants nevertheless continue to make objections to these narrow requests.  These objections should be rejected.

*First*, the Movants argue that Mr. Salisbury should not have to produce the majority of his documents regarding Mr. Akhmetshin because "Rinat Akhmetshin has been found to be a 'consulting expert' in the Washington Case and a ***substantial percentage*** of documents produced by or provided to him were privileged."  ECF No. 28  at 17-18 (emphasis added).  In fact, in the D.D.C. proceeding, the court found that only 34 out of the 435 documents were privileged (or roughly 8% of the documents).  Moreover, the D.D.C. found that the "overwhelming majority" of the withheld documents were not privileged, and that the vast majority of the Movants' privilege assertions were "meritless" and "overbroad."  Mem. Op. at 2, D.D.C. ECF No. 49 (Mangold Decl. Ex. A);  Fees Order at 3 n. 1 & 7, D.D.C. ECF No. 60 (Mangold Decl. Ex. C).

*Second*, the Movants argue that IMR should not be permitted to seek information about the hacking of documents concerning Shaft Sinkers, ENRC, and the Trio.  This argument lacks merit.  The subject of the Dutch Action is whether IMR controlled Shaft Sinkers.  Thus, documents concerning Shaft Sinkers could easily be the subject of hacking, as they would be central to the issues in that case.  While IMR agrees that ENRC and the Trio are not relevant in any of these litigations, IMR included ENRC and the Trio in its document requests because the Movants continue to cite

27

to ENRC and Trio articles and documents in legal proceedings against IMR.  Further, the documents produced by Mr. Akhmetshin suggest that ENRC and the Trio were a focus of the smear campaign.  Accordingly, IMR has good reasons to believe that these documents could bear on issues related to the hacking and smear campaign.

*Finally*, the Movants argue that IMR's requests for documents related to hacking should be limited to hacking "by or at the direction of ECVK or Mr. Salisbury."  ECF No. 28 at 20. IMR does not know how burdensome it would be for Mr. Salisbury to produce documents related to hacking directed by other people, but to the extent that Mr. Salisbury possesses documents or communications concerning the hacking of IMR at all, those materials are relevant to determining whether and to what extent ECVK had an involvement in or knowledge about the hacking.

## IV.     THE MOVANTS'  DISCOVERY REQUESTS SHOULD BE DENIED

### A.     The Movants' Novel Request for Pre-Discovery Discovery Should Be Denied

The Movants argue that they should be permitted to take extensive pre-discovery discovery before the Court even decides the motion to quash, including the taking of multiple depositions (ECF No. 37 at 21), the propounding of dozens of interrogatories (ECF No. 37 at 20-22), and the compelled production of numerous categories of materials listed in their proposed order to show cause.  The Movants do not cite to a single case where this type of request has ever been granted, and IMR is not aware of any such case.  The lack of case law is not surprising.  As discussed above, the evidentiary showing required for a Section 1782 application is minimal.  Because IMR has met that burden here, the Movants' novel request should be denied.

28

**B.      The Movants' Voluminous Discovery Requests Should Be Denied**

Consistent with their practice in other litigations, the Movants include a litany of misleading allegations about miscellaneous individuals, entities, legal proceedings, and events in their motion papers, and attempt to attribute all of this alleged conduct to IMR.  Many of these allegations involve ENRC and the "Trio," and are accompanied by citations to negative articles that have appeared in the press.  IMR in no way concedes that it engaged in any misconduct.  But more to the point, these misleading allegations have no relevance to any of the legal issues before the Court, and the Movants' voluminous requests for reciprocal discovery on these topics should be denied.

As an initial matter, IMR notes that the Court should not credit any of these negative allegations.  Many of the allegations directly contradict well-established court findings and/or are phrased in a highly misleading way.  For example, Mr. Salisbury asserts that "EuroChem never pursued any negative press campaign" against IMR (ECF No. 28 at 8), even though the D.D.C. "conclusively" found that "Mr. Akhmetshin, in fact, engaged in strategic communications and public relations on ECVK's behalf."  Mem. Op. at 7 & 10, D.D.C. ECF No. 49 (Mangold Decl. Ex. A).

In other instances, the Movants describe actual events but use misleading descriptions of those events.  For example, in the section labeled "IMR's Witness Intimidation Efforts in the Dutch Case," Mr. Salisbury asserts that "counsel for IMR/Shaft Sinkers" sent "threatening letters" to witnesses in the Dutch Action.  ECF No. 21 at 10; *see also* ECF No. 37 at 6.  Information provided by Shaft Sinkers's counsel demonstrates that the actual events were not as the Movants described.  Namely, in the course of the Shaft Sinkers Arbitrations, Shaft Sinkers discovered that a number of its former employees had disclosed confidential information about Shaft Sinkers to ECVK, in violation of their employment contracts and in breach of their fiduciary duties.  *See* Mangold Decl. Ex. E.  In response, Shaft Sinkers's counsel sent them letters setting forth their

contractual obligations and requesting that the confidential information be returned.  *See*

Maloney Decl. Ex. 34.  As the Court will see, this is the type of correspondence that is routinely

sent in breach of contract disputes, not an attempt at witness intimidation.  Further, the letters

were sent by counsel for Shaft Sinkers, not by counsel for IMR.

Aside from being misleading, none of the Movants' various attempts to paint IMR in a

negative light are relevant to the legal issues before this Court.  The Movants' requests for

discovery on these topics should also be denied.  In contrast to IMR's three discovery requests,

the Movants' 1,000+ pages of submissions included approximately 73 discovery requests.  These

requests cover a sweeping barrage of topics involving at least 15 individuals, at least 7 different

entities, nearly a dozen foreign legal proceedings and investigations, and events taking place in

England, France, Belgium, Russia, Switzerland, South Africa, the Netherlands, Kyrgyzstan,

Uzbekistan, the Czech Republic, Ukraine, Cyprus, Germany, Kazakhstan, and the United States.

These voluminous requests go extremely far afield from the material sought in IMR's subpoena

and pertain to numerous entities and individuals that are not parties to this Section 1782 action or

the Dutch proceedings.  *See In re Republic of Ecuador*, 2011 WL 736868, at *10 (N.D. Cal. Feb.

22, 2011) (denying reciprocal discovery for information that is "far afield from the material

Applicants seek from Respondents").  Accordingly, these requests should be denied.[5]

---

[5] In this case, the Court would be well within its discretion to deny all of the Movants' reciprocal discovery demands.  However, in the event that the Court is inclined to grant any discovery, that discovery should be limited to information that is actually related to the Section 1782 application and the Dutch proceedings, and should include strict safeguards that protect the confidentiality of IMR's highly sensitive information.  For example, if the Court were to condition discovery from Mr. Salisbury on IMR's production of the thumb drive files, IMR would respectfully request that the files be reviewed on an attorneys' eyes only basis.

30

## CONCLUSION

For the foregoing reasons, IMR respectfully requests that the motion to quash and request

for pre-hearing discovery be denied.

Dated:        New York, New York
              December 7, 2015

Respectfully submitted,

_Rebecca G. Mangold_
Jonathan D. Cogan
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel:  +1 212 488 1200
Fax: +1 212 488 1220
rebecca.mangold@kobrekim.com
jonathan.cogan@kobrekim.com

*Counsel for Applicant International Mineral
Resources B.V.*