UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF INTERNATIONAL MINERAL RESOURCES B.V. FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicant. | Case No. 1:15-mc-00241 |

## SECOND DECLARATION OF ROBBERT DE BREE

Pursuant to 28 U.S.C. § 1746, I, Robbert de Bree, declare under penalty of perjury as follows:

1. I am an attorney licensed to practice in the Netherlands. I am a Partner of the law firm Wladimiroff Advocaten N.V. I represent International Mineral Resources B.V. ("IMR") in a proceeding currently pending in the Netherlands against EuroChem Volga-Kaliy LLC ("ECVK"), for these purposes captioned *EuroChem Volga-Kaily LLC v. International Mineral Resources B.V.* with case number C/13/539097 (the "Dutch Action").

2. I submit this Declaration in support of IMR's Opposition to Patrick Salisbury's Motion to Quash.

3. I am familiar with the facts set forth in this Declaration, either from personal knowledge or on the basis of documents that have been provided to me. Insofar as they are within my own knowledge, the facts and matters testified to are true to the best of my own knowledge and belief. Because this Declaration is being submitted for a specific legal purpose,

the information provided in the Declaration does not include every single fact that I know that may be pertinent to this subject matter.

4. I have read and am familiar with Patrick Salisbury's Memoranda of Law in Support of Respondent's Motion to Quash or Modify the Subpoena of IMR and Grant Reciprocal Discovery (the "Motion"), as well as the accompanying submissions by Koppenol-Laforce ("Koppenol Submissions").

5. Neither the Motion, nor the accompanying Koppenol Submissions cause me to change my declaration dated 4 August 2015, although I provide additional information on some of the statements in that declaration below.

6. The Motion and the Koppenol Submissions accuse IMR of engaging in fraud in connection with the Dutch Action and allege that I was somehow involved in that fraud. Those allegations are without merit and have no basis in fact.

7. The only example of this alleged "fraud" given in the Koppenol Submissions is the allegation that a cornerstone of IMR's defence was that it did not control Shaft Sinkers and that IMR was unable to influence Shaft Sinkers policy or management and that, in that framework, IMR concealed the so-called "Capstone Shareholders Agreement" as evidence in the Dutch Action. However, the Koppenol Submissions do not correctly reflect IMR's position in the Dutch Action. As explained in paragraph no. 162 of IMR's Statement of Defence in the appeal (quoted below), IMR takes the view that the theoretical possibility of IMR influencing Capstone is not relevant to the legal issues being considered by the Dutch court:

> *"At this place it is (already) remarked that much of what was mentioned in the appeal writ [by ECVK] regarding the relationship between the shareholders of Capstone is beside any relevant point for the decision, since it is the case that*

2

> *IMR was majority shareholder and it could with the nomination rights as also with the casting vote (in case of deadlock) of the chairman of the board exercise a decisive influence (theoretical possibility) on the policy of the company. That is not at issue; relevant decision point is only whether IMR made use of this (actual use) and if so, whether this occurred in an improper manner and has led to the alleged unlawful actions at the level of the subsidiary of Capstone, Shaft Sinkers.*

8. Accordingly, the allegation that there was a "fraud" and an "orchestrated effort to put forward a false case" in the Dutch Action is baseless.

9. Mr. Salisbury is not counsel of record in the Dutch Action. He could not be as he is not registered as a Dutch lawyer (advocaat).

10. It is my understanding that IMR seeks additional discovery in part because it is trying to determine which documents were stolen through hacking scheme and how those documents were used.

11. On 23 June 2015, ECVK filed Exhibit 320 in support of its submission in the Dutch Appeal.  On 6 October 2015, ECVK filed Exhibit 362 in support of its submission in the Dutch Appeal.

12. As I mentioned in paragraphs 12 through 13 of my declaration dated 4 August 2015, Dutch courts will consider evidence that a party engaged in inequitable litigation conduct, and Dutch courts have broad discretion to remedy cases of misconduct.  The Koppenol Submissions in essence describe the same position on Dutch law as can be found in my earlier declaration.  In paragraph no. 26 of the Submission, Koppenol states that, under Article 21 of the Dutch Code of Civil Proceedings, "parties are obliged to furnish the facts relevant to the decision fully and truthfully.  If this obligation is not met, the court can make inferences as it deems fit."

I agree that Dutch courts can make negative inferences when a party does not state facts that are relevant to the court's decision in a full and frank manner. I add that the relevance of any given set of facts is assessed by the court.[1]

13. The Koppenol Submissions undervalue some elements of the case law in Dutch civil procedural law. The Koppenol Submissions rightly point out that illegally obtained material, as such, does not lead to an exclusion of that material. Additional circumstances would be necessary to tip the scales. However, from the case law it is apparent that these additional circumstances might well be the fact that the illegally obtained material was obtained by the party who presents the material in civil litigation and/or that it concerns a grave breach of privacy rights.[2] In other words, the Koppenol Submissions overstate the rule and undervalue the exception when it comes to the admissibility of illegally obtained evidence in Dutch civil procedure.

14. Article 152(2) of the Dutch Code of Civil Proceedings provides that evidence may be furnished by any means and that "the evaluation of evidence is left to the judgment of the court." Koppenol incorrectly states in paragraph no. 19 of her Submission that Article 152(2) provides that "the evaluation of evidence is left to the discretion of the court." Further, the

---

[1] *See* Supreme Court 25 March 2011, ECL:NL:HR:2011:BO9675, NJ 2012, 627.

[2] *See* Advocate-General Wissink in his opinion before Supreme Court 11 July 2014, ECLI:NL:HR:2014:1632, par. 2.13, as well as Advocate-General De Vries Lentsch-Kostense in her opinion before the Supreme Court judgment of 18 April 2014, quoted below, par. 18, who states: "*With serious breaches of the right to privacy in general exclusion of the evidence will follow. A clear example of a serious breach of the right to privacy is where criminal norms have been breached*." *See also* Dutch Supreme Court 18 April 2014, ECLI:NL:HR:2014,942, NJ 2015, 20 (quoted in the Koppenol Submission), in which the Supreme Court did not quash a court of appeal judgment in which the illegally obtained information was excluded and in which case the party using the illegally obtained material has itself illegally obtained such by breaching a professional code and by an intrusion on the privacy of the subject of the illegal obtainment of the information; and Asser (Asser Procesrecht/Asser 3 2013/144 onwards – under the heading "the end does not justify all means") who says that the character of the norm breached by the illegal obtainment and the question whether that norm protects against for instance disclosure of material plays a role in the assessment.

Koppenol Submissions err in describing this body of case law as one where the courts have full discretion. The court indeed can weigh and balance the circumstances at issue, but "full discretion" would suggest (wrongly) that the Dutch Supreme Court could not test the ruling of the Court of Appeal nor its reasoning, and thus would suggest (again wrongly) that courts can do in an unfettered manner what they choose in this field of the law.  That is not the case, as will be apparent from the case law of the Dutch Supreme Court quoted both here and in the Koppenol Submissions. It is, however, indeed a mistake often and easily made by Dutch lawyers not practicing and having no right of audience before the Dutch Supreme Court.

15. I also note that, although the Koppenol Submissions were submitted as "Legal Opinions," the majority of the statements in the Submissions are party-driven characterizations of facts, rather than impartial descriptions of Dutch law. Because I understand that those facts are ultimately irrelevant to the Motion, I do not address them here.

16. On 20 November 2015, IMR initiated new proceedings by a writ of summons against ECVK (which proceedings will be conducted by the District Court of Amsterdam), alleging that ECVK is liable for the damages caused by the attachment of IMR's assets in (relation to) the Dutch Action.  Attached hereto as Exhibit A is a true and correct copy of that writ of summons, along with an unofficial English translation.

17. The writ of summons, among other things, alleges that the attachment was illegal because ECVK lacks a claim against IMR and levying the attachment was abusive. Further, the writ of summons alleges that ECVK, in order to obtain leave to levy the attachment, inter alia abused confidential information obtained by hacking into IMR's computer systems and also planted (false) negative stories about IMR in the press so that those stories could later be cited in its attachment

application.  IMR seeks damages and other relief from ECVK for defamation and for the losses associated with the freezing of its assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in The Hague, on this 7th day of December, 2015.

_____
Robbert de Bree